**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re: CHRYSLER, LLC, et al,          Case No. 10 CV 2493
                                    REJECTED DEALERS' BRIEF ON APPEAL

                Debtor,

*Procedural History.*

On May 27, May 28 and May 29, 2009, the United States Bankruptcy Court held hearings to discuss the conditions upon which Chrysler, LLC might be transferred to its new owners.   At the May 27th hearing, the testimony of Fiat representative Alfredo Altavilla was obtained, whose statement gives rise to this appeal.

On May 31, 2009,   Judge Arthur J. Gonzales, entered the Order, (1) Authorizing The Sale Of Substantially All Of The   Debtors' Assets, Free And Clear Of All Liens, Claims, Interests And Encumbrances, (2) Authorizing The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases In Connection Therewith And Related Procedures And (3) Granting Related Relief.

On June 1, 2009, the court followed with its Opinion Granting Debtors' Motion Seeking Authority To Sell, Pursuant To 11 USC §363, Substantially All Of The Debtors' Assets.

On June 9, 2009, the court entered its Order, Pursuant To Sections 105 And 365 Of The Bankruptcy Code And Bankruptcy Rule 6006, (A) Authorizing The Rejection Of Executory Contracts And Unexpired Leases With Certain Domestic Dealers And (B) Granting Certain Related Relief.

On June 19, 2009, the court followed with its Opinion Regarding Authorization Of Rejection Of All Executory Contracts And Unexpired Leases With Certain Domestic Dealers And Granting Certain Related Relief.

On December 25, 2009, Appellants filed their Motion Of Certain Dealers To Reconsider The Court's June   9, 2009, Rejection Order And June 19, 2009 Rejection Opinion, and filed Movants' Memorandum In Support Of Motion To Reconsider The Court's June 9, 2009 Rejection Order And June 19, 2009 Rejection Opinion.

Thereafter, Old Car Co filed its Objection Of Debtors And Debtors In Possession To Amended Motion Of Certain Dealers To Reconsider The Court's June 9, 2009, Rejection Order And June 19, 2009 Rejection Opinion.

Appellants then filed their Amended Motion Of Certain Dealers To Reconsider The Court's June 9, 2009, Rejection Order And June 19, 2009 Rejection Opinion Amended Only To Include Additional Rejected Dealers As Moving Parties.

Old Car Co then filed their Objection and Brief on January 15, 2010.

On January 22, 2010, Movants filed a Reply To Debtor's Objection Brief.

Judge Gonzales then entered the Order Signed On 2/5/2010 Denying Rejected Dealers' Motion For Reconsideration Of The June 9, 2009 Rejection Order And The June 19, 2009 Rejection Opinion (Docket #6342, February 5, 2010) And His Opinion Signed 2/5/2010 Denying Rejected Dealers' Motion For Reconsideration Of The June 9, 2009 Rejection Order And The June 19, 2009 Rejection Opinion (Docket #6341, opinion signed on February 5, 2010).

Appellants then filed their Notice Of Appeal on February 12, 2010; however, because of a snowstorm and other problems with the electronic filing system, the payment of fees for the appeal were not paid until February 16, 2010, both of which were within the fourteen days required to file a notice of appeal.

Appellants then certified the record on appeal on March 2, 2010, fourteen days from the effective date of the Notice of Appeal.

REJECTED DEALERS' BRIEF ON APPEAL - 2

***Statement of Applicable Facts.***

1.   On May 27, 2009, Fiat representative Alfredo Altavilla was questioned, and his

response is set forth in the Sale Hearing Transcript at pg. 352:

>   Q. If this transaction closes without an absolute requirement of a particular number of dealers that are being terminated, would Chrysler still go through with this deal -- I mean, rather, would Fiat still go through with this deal?
>
>   A. The answer is that a restructure needs to occur. *Whether it occurs before or after the closing of the deal is not a material difference*. [Italics added].

2.   In Footnote 18 of the June 19, 2009 Rejection Opinion, Judge Gonzales wrote,

"Altavilla testified that it did not make a material difference whether the restructuring of the

dealership network occurred before or after the closing of the Fiat Transaction..."

3.   In Footnote 21 of the June 19, 2009 Rejection Opinion, Judge Gonzales wrote,

"...Altavilla also responded affirmatively to a question regarding whether a dealership network

needed to be restructured for the Fiat Transaction to close, stating that a "restructuring needs to

occur."

4.   At the May 28, 2009 hearing Peter Grady testified, (page 477 of the May 28, 2009

Hearing Transcript) as follows:

>   Q. But Fiat did not require the rejection of the 789 agreements, did it?
>
>   A. No. But Fiat did encourage and buys into a restructuring of the dealer network which includes rationalization.
>
>   Q. And this was not done at their insistence, though, was it?
>
>   A. It was not done at their insistence, but it was part of what we looked at as an opportunity --

5.   Debtor's counsel, in their objection (response) to Movants' Motion, claimed the

following, (pg. 18, Footnote 23):

"See ...Tr. of May 28, 2009 Hr'g at [488]...(testimony of Peter M. Grady)... stating that,

REJECTED DEALERS' BRIEF ON APPEAL - 3

absent rejection of the rejected dealer agreements, Fiat would not have proceeded with the Fiat Transaction)."

On page 488, no such statement appears.

6.    Debtor's Objection Memo at par. 44, pgs. 25-26 claims the following:

> Further, the Dealer Rejection Opinion disproves the Movants' argument on the merits. The Court's statements therein show that the Court did not conceal, mischaracterize or alter Mr. Altavilla's testimony and was fully aware of his statement that Fiat did not perceive a material difference in whether the dealership rejections occurred before or after the closing of the Fiat Transactions, as long as the network restructuring did, in fact, occur *as part of the sale transaction* [emphasis added].

But Altavilla never testified as asserted. (See paragraph 1 above.)

7.    Debtor's counsel points to the following citation: *"See Dealer Rejection Opinion at 195-97 (containing several references to Altavilla's testimony)."*    There is no such quote from Altavilla in the Rejection Opinion at 195-197.

**Standard of Review.**

Rule 60, titled "Relief from a Judgment or Order" is incorporated into bankruptcy practice by Fed. R. Bankr. P. 9024.    F.R.C.P. 60(d)(3) states:

> *This rule does not limit a court's power to:*
> *(1) entertain an independent action to relieve a party from a judgment, order, or proceeding...*
> *(3) set aside a judgment for fraud on the court.*

Movants retain their right under F.R.C.P. 60(d)(1) to bring an *independent action* for relief from fraud on the court as Movants' Motion For Reconsideration under F.R.C.P. 60(d)(3) was treated by Judge Gonzalez as a motion:

> *"Moreover, courts addressing "motions for fraud upon the court have consistently proceeded on the presumption that the savings clause applies to motions." Weldon v. United States, 225 F.3d 647, 2000 WL 1134358 at \*1 (2d Cir. 2000) (unpublished summary order)..."*

*In re Old Car Co*, 2010 Bankr. LEXIS 287 (Bankr. S.D.N.Y. 2010), or Appendix A, pg. 13.

REJECTED DEALERS' BRIEF ON APPEAL - 4

Denial of Movants' Motion To Reconsider is reviewed by the District Court for abuse of discretion. *Grace v. Bank Leumi Trust Co.*, 443 F.3d 180, 187 (2d Cir. 2006). "A ...court 'abuses' or 'exceeds' the discretion accorded to it when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding..." *Zervos v. Verizon Wireless New York, Inc.* 252 F.3d 163, 168-169 (2d Cir. 2001) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 L. Ed. 2d 359, 110 S. Ct. 2447 (1990) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence."); *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) ("A district court abuses its discretion if it bases its ruling on a mistaken application of the law or a clearly erroneous finding of fact.")

**1.    The Court Erred And Abused Its Discretion By Determining That There Was No Fraud On The Court When Judge Gonzalez Impermissibly Changed The Testimony Of Fiat Executive, Alfredo    Altavilla, And Then Cited To The Altered Testimony In The June 19, 2009 Rejection Opinion To Support Approval, Under Section 365(A) Of The Bankruptcy Code, For The Debtor's Rejection Of Movants' Dealership Contracts.**

Fraud on the court prohibits the judicial machinery from functioning in its normal manner:

> "While fraud on the court can support Rule 60(d) relief, such fraud must "seriously affect the integrity of the normal process of adjudication." *Gleason v. Jandrucko*, 860 F.2d at 559; accord *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1325 (2d Cir. 1995) (observing that such fraud "embraces only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases" (internal quotation marks omitted)). This is because Rule 60(d) actions are warranted only when necessary "to prevent a grave miscarriage of justice." *United States v. Beggerly*, 524 U.S. 38, 47, 118 S. Ct. 1862, 141 L. Ed. 2d 32 (1998)."

*Linko, Inc., v. Naoyuki Akikusa*, 2010 U.S. App. LEXIS 3498 (2d. Cir. 2010) (summary order).

In Footnote 21 of the June 19, 2009 Rejection Opinion, Judge Gonzalez impermissibly changed the meaning of testimony of Fiat executive, Alfredo Altavilla, ("Altavilla").    The second sentence of Footnote 21 states:

"Altavilla also responded affirmatively to a question regarding whether a dealership network needed to be restructured for the Fiat Transaction to close, stating that a "restructuring needs to occur."

That is absolutely false.    Altavilla never testified as asserted in Footnote 21, or in any other part of the record.    In fact, Altavilla stated *exactly the opposite* when he told the Court that it was "not a material difference" to Fiat whether dealer restructuring happened before or after the sale closed while being cross-examined by dealer counsel, Russel McRory, Esq.    The exact testimony Judge Gonzalez references in Footnote 21 is found in the May 27, 2009 Sale Hearing Transcript at pg. 352:

Q. If this transaction closes without an absolute requirement of a particular number of dealers that are being terminated, would Chrysler still go through with this deal -- I mean, rather, would Fiat still go through with this deal?

A. The answer is that a restructure needs to occur. *Whether it occurs before or after the closing of the deal is not a material difference*. [Italics added].

Altavilla's testimony is clear and unambiguous: it made no material difference if the restructuring occurred after the closing of the deal.    Therefore, Fiat would have gone through with the purchase without Movants having lost their dealerships.    As such, there was no reason for Debtor to reject those contracts and certainly no legal cause for the Court's approval of the rejections.

Judge Gonzalez changed the meaning of this testimony so as to invalidate what the witness actually said.    This is not proper by any standard.    It is an erroneous finding of fact and the only fact upon which Judge Gonzalez could have relied on to claim that the business judgment standard was met, thereby allowing for rejection of Movants' contracts.    Judge Gonzalez's failure to correct the record in his Opinion on Reconsideration further defiled the court and evidences an intentional fraud.

The record clearly and convincingly indicates that the assertion by Judge Gonzalez in

Footnote 21 is unequivocally false.    It is judicial ventriloquism concerning the most important issue related to the Rejection Motion, and it mocks the purpose of justice.    Without the false assertion erroneously attributed to Altavilla by Judge Gonzalez, the record of the case lacks any evidence whatsoever to indicate that rejection of the dealership contracts was requested by Fiat or New Chrysler as a condition precedent to the sale closing.    Without the false assertion of Footnote 21, the business judgment test required for Court approval of the dealer rejections could not be met.    To allow the fraudulent assertion of Footnote 21 to determine Movants' claims is a grave miscarriage of justice.

*Reckless Disregard For The Truth and/or Intentional Fraud.*

Movants did not originally allege an intentional fraud, but rather plead that Footnote 21 exhibited *a reckless disregard* for the truth which amounted to fraud on the court (see Movants' Memo).    Judge Gonzalez stated in his Opinion on Reconsideration:

> "[T]he Movants argue that the Court misstated certain testimony made by a witness at the Rejection Hearing and thereby exhibited a reckless disregard for the truth. Specifically, the Movants maintain that, in footnote 21 of the Opinion, by quoting only the first sentence of a witness's response to a specific question during the hearing, the Court misstated the testimony."

*In re Old Car Co*, 2010 Bankr. LEXIS 287 (Bankr. S.D.N.Y. 2010), Appendix A, pg. 23.

The record is now decisive that Judge Gonzalez did not merely misstate Altavilla's testimony.    Judge Gonzalez *changed* the meaning of Altavilla's testimony. And it is precisely this action which gives rise to fraud on the court.    Furthermore, it's not simply that Movants take issue with the Court's parsed quotation, Movants take issue with the false *assertion* that the parsed quotation was an affirmative response to the question presented, when the response was *undeniably* negative.    In fact, when Footnote 21 is broken down, *two* false statements are brought to light.    Please review Footnote 21 again:

"Altavilla also responded affirmatively to a question regarding whether a dealership network needed to be restructured for the Fiat Transaction to close, stating that a "restructuring needs to occur."

The first false statement is that Altavilla "responded affirmatively" to a question regarding whether the dealership network needed to be restructured for the sale to close. Altavilla's answer was actually a negative response in that it made no "material difference" to Fiat when dealer restructuring took place.    There is no possible way Altavilla's response could be taken as an affirmative answer to the question presented.    That's a linguistic impossibility.

Second, the answer as parsed by Judge Gonzalez – "restructuring needs to occur" - is not time sensitive. The parsed response doesn't indicate whether "restructuring needs to occur" before or after the sale closes.    The answer as parsed is nonresponsive and certainly misleading. And there is no justification for the Court having spliced an unintended response into the record. An affirmative answer would have been, "Restructuring needs to occur for the sale to close". That would have been an affirmative response.    But "restructure needs to occur" on its own is actually non-responsive since it doesn't say whether restructuring had to occur before the sale closed.

Meanwhile, the very next sentence - *"Whether it occurs before or after the closing of the deal is not a material difference"* explains perfectly that the witness did give a time sensitive answer - not in the affirmative - but in the negative.    The plain meaning of Altavilla's complete response is that restructuring did *not* need to occur for the sale to close.    There is no lawful justification for allowing the fraudulent Footnote 21 to stand.    Tellingly, Judge Gonzalez didn't even try to defend the merits of Footnote 21 in his Opinion on Reconsideration.

Movants initially claimed that Judge Gonzalez's misstatement in Footnote 21 was so egregious as to exhibit a reckless disregard for the truth, regardless of intent.    Movants relied

upon *Workman v. Bell,* 245 F.3d 849 (6th Cir. 2001) in support of the "reckless disregard for the

truth" standard:

> "The elements of a 'fraud upon the court' are numerous. Fraud on the court is conduct: 1)
> on the part of an officer of the court; 2) that is directed to the judicial machinery itself; 3)
> that is intentionally false, willfully blind to the truth, or is in reckless disregard for the
> truth; 4) that is a positive averment or a concealment when one is under a duty to disclose;
> 5) that deceives the court."

*Workman v. Bell at* 852.

    The situation was further compounded and confused by Footnote 18 in the same June 19,

2009 Rejection Opinion which discussed the very same question and answer cited by Gonzalez

in Footnote 21.    Where Footnote 18 correctly states Altavilla's testimony, Footnote 21 is utterly

false thereby making the two footnotes schizophrenic:

> Footnote 18 "Altavilla testified that it did not make a material difference whether the
> restructuring of the dealership network occurred before or after the closing of the Fiat
> Transaction..."

> Footnote 21 "...Altavilla also responded affirmatively to a question regarding whether a
> dealership network needed to be restructured for the Fiat Transaction to close, stating that
> a "restructuring needs to occur."

    Anyone not familiar with the May 29th Hearing Transcript would be left with the

impression that Footnotes 18 and 21 refer to separate questions and answers, when in reality, all

of this stems from the same question and answer.    Had the Court been confronted with two

separate answers by the same witness, Judge Gonzalez might have weighed both answers and

chosen between them the answer he gave more weight to.    But that was not the case.    There

was only one question and one answer.    Therefore, Footnotes 18 and 21 stand in stark

indefensible contrast to each other since Footnote 18 is true and Footnote 21 is false. As such, by

the creation of the false assertion in Footnote 21, the Court has changed the testimony of this key

witness.    A Judge certainly does not have the power to *change* testimony of a witness and then

rely upon the changed testimony in his Order and Opinion.    Judge Gonzalez's refusal to acknowledge the error when it was so clearly laid out for him in Movants' Memo, and to thereafter stand by it, elevates Judge Gonzalez's conduct from reckless to intentional.

*Failure to Make Timely Appeal Is Irrelevant*.

The Court erred when it held that the appellate process was the only proper avenue to attack fraud on the court:

> "If the Movants disagreed with the Court's characterization of the facts, the evidence, or the law, they had a ready avenue for redress in the ability to file an appeal to the Court's ruling. Any issues that may have been "addressed through the unimpeded adversary process" are not appropriately attacked on the basis of fraud upon the court. Thus, any allegation concerning a mischaracterization of fact, evidence or law, either by the opposing counsel or by the Court does not rise the level of fraud on the court [*sic*]."

*In re Old Car Co*, 2010 Bankr. LEXIS 287 (Bankr. S.D.N.Y. 2010), Appendix A, pg. 23.

Judge Gonzalez does not cite any authority for this erroneous conclusion of law.    In fact, fraud on the court is available as a remedy *at any time* as long as the conduct involved has defiled the court by inhibiting the normal judicial machinery.    *Hadges v. Yonkers Racing Corp*., at 1325.    Judge Gonzalez himself wrote earlier in the Opinion on Reconsideration that, "[R]ule 60(d)(3) is intended 'to protect the integrity of the judicial process' and, therefore, is not time-barred.    *Bowie v. Maddox*, No. 03-948, 2010 WL 45553, at * 2, ___ F.Supp. ___, ____ (D. D.C. 2010) (citing 12 James WM.MOORE et al., MOORE'S FEDERAL PRACTICE § 60.21[4][g] & n.52 (3d ed. 2009) (other citation omitted))."    *In re Old Car Co*, 2010 Bankr. LEXIS 287 (Bankr. S.D.N.Y. 2010), Appendix A, pg. 14.    The Court's opinion that Movants' allegations of fraud could have been brought on appeal is therefore irrelevant.

Judge Gonzalez changed the meaning of Altavilla's testimony and then relied upon his own revision to support the Rejection Order.    The court has therefore been defrauded and it is entirely irrelevant that the time for direct appeal has expired.    "It is thus fraud where the court

or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function--thus where the impartial functions of the court have been directly corrupted." *Envirotech Corp. v. Amstar Corp.*, 48 F.3d 1237 (Fed. Circ. 1995) (quoting *Bullock v. United States*, 721 F.2d 713, 718 (10th Cir.1983)).

Changing the unambiguous testimony of a key witness to make that testimony fit the Court's desired conclusion is a failure of the judicial process which directly corrupts the impartial function of the court.    *Envirotech* and *Bulloch* also make clear that intentional corruption or improper influence aren't even necessary elements of fraud on the court if one establishes that the judge has not performed his common judicial function.    Such a malfunction of the judicial machinery is itself enough to establish fraud on the court.

There is no possible characterization of Altavilla's testimony which could support Judge Gonzalez's false assertion in Footnote 21.    Footnote 18 is the proper statement of the testimony, but it causes more confusion, as it gives the appearance that the Court weighed two different questions and two different answers when only one question and answer served both Footnotes. To this, Judge Gonzalez stated:

> "The Movants further argue that even though the second sentence contained in the response by the witness was referenced by the Court in footnote 18 of the Opinion, the parsing of the witness's testimony into "separate footnotes on two separate pages [gave] the appearance of two separate questions and two separate answers" and had a "devastating effect . . . on the record."    First, the Movants are incorrect that the Court's Opinion impacted the underlying record upon which the Court based its Opinion. That underlying record is what it is."

*In re Old Car Co*, 2010 Bankr. LEXIS 287 (Bankr. S.D.N.Y. 2010), Appendix A, pg. 23

This fails to acknowledge the ongoing record before the federal courts which includes the June 19, 2009 Rejection Opinion, Movants' Motion To Reconsider, Debtor's Reply, the Opinion on Reconsideration, etc.    Additionally, Judge Gonzalez does not disclose that his distortion of

Altavilla's testimony is the fraud on the court that ultimately influenced his Rejection Order.

The seminal United States Supreme Court case which concerned fraud on the court is *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944), *overruled on other grounds by Standard Oil Co. of Cal. v. United States*, 429 U.S. 17, 97 S. Ct. 31, 50 L. Ed.2d 21 (1976).    In Footnote 10 of Judge Gonzalez's Opinion on Reconsideration, he summarized the holding in *Hazel-Atlas*, a case where, in an effort to obtain a patent, the attorneys of a company arranged to have a positive article concerning the relevant device published in a law journal. *See Hazel-Atlas*, 322 U.S. at 240, 64 S. Ct. at 998-99. In furtherance of the fraudulent plan, it was misrepresented that the article was authored by an expert in the field. *Id*. at 240, 999. The Supreme Court eventually noted that the company *and its lawyers* urged the article on the court and prevailed, and that, although there was no way to accurately measure the degree to which the court was influenced by the article; nevertheless, because the company and its lawyers urged the article and prevailed, they could not "dispute its effectiveness." *Id*.    To this, Judge Gonzalez noted in Footnote 10 of his Opinion on Reconsideration:

> "Moreover, the Supreme Court did find that the circuit court was deceived by the wrongly-attributed article inasmuch as the Supreme Court asserted, with respect to the company having urged the article before the third circuit, that '[t]he reference was not without effect.' *Id*. at 241, 64 S. Ct. at 999. The Supreme Court cited the Third Circuit's extensive quotations from the article, *Id*., as evidence that the article affected or influenced the court. *Id*. at 246-47, 64 S. Ct. at 1001 (noting that '[w]hether or not it was the primary basis for that ruling, the article did impress the Court, as shown by the Court's opinion.')."

*In re Old Car Co*, 2010 Bankr. LEXIS 287 (Bankr. S.D.N.Y. 2010), Appendix A, pg. 16.

Since Judge Gonzalez changed the meaning of Altavilla's testimony by false assertion in Footnote 21, it is not necessary - according to the holding in *Hazel-Atlas* - for Movants to establish the extent to which the Court relied on the falsified assertion.    That it was cited by

REJECTED DEALERS' BRIEF ON APPEAL - 12

Judge Gonzalez in his June 19, 2009 Rejection Opinion is analogous to the Third Circuit having

quoted from the false patent article in *Hazel-Atlas*.    The citation was enough to establish fraud

on the court.

*Every Other Witness Testified In Opposition to Footnote 21.*

Altavilla's testimony that dealer restructuring did not need to occur as a condition

precedent to the sale closing is in complete accord with every other witness who testified on this

point.    There is absolutely no evidence whatsoever in the record of the case indicating that Fiat,

or any other faction of New Chrysler (including the US Government, the Canadian Government

or the United Auto Workers) ever requested that the Movants' contracts be rejected by the Debtor.

Old Chrysler Chairman and CEO Robert Nardelli was very candid about this (see May 28, 2009

Hearing Transcript at 390):

> Q. Did the UAW ask for this dealer reduction?
>
> A. No.
>
> Q. Did the American government ask for this dealer reduction?
>
> A. No.
>
> Q. Did the Canadian government ask for this dealer reduction?
>
> A. No.
>
> Q. Did Fiat ask for this dealer reduction?
>
> A. No, I don't recall -- again, that -- I don't know if that was an item that was expressly indicated in the agreement or not.

The Court's Rejection Order and Opinion did not consider Nardelli's testimony.    As to

Nardelli's lack of recall pertaining to the Master Transaction Agreement ("MTA"), that

document does not contain a request for rejection of the 789 dealers.    The record is undisputed

that dealer rejections were never requested by any faction of New Chrysler.    Peter Grady - one

REJECTED DEALERS' BRIEF ON APPEAL - 13

of the leading Old Car Co. executives charged with the duty of implementing dealer rejections -

testified as follows (May 28, 2009 Hearing transcript, at 477):

> Q. But Fiat did not require the rejection of the 789 agreements, did it?
>
> A. No. But Fiat did encourage and buys into a restructuring of the dealer network which includes rationalization.
>
> Q. And this was not done at their insistence, though, was it?
>
> A. It was not done at their insistence, but it was part of what we looked at as an opportunity --

Altavilla further weighed in on this issue (see May 27, 2009 Hearing Transcript at 352):

> Q. To your knowledge, did the United Auto Workers or their VEBA request a reduction of the dealer network?
>
> A. This has never been part of any discussion between us and the UAW and VEBA.
>
> Q. To your knowledge, in any of your discussions with the United States Treasury, has the United States Treasury requested or demanded any reduction in the dealer network?
>
> A. U.S. Treasury has never demanded such a restructuring, at least in presence of Fiat.
>
> Mark Manzo was the Chief Financial Advisor for the Debtor in this transaction. The

Court relied extensively upon Mr. Manzo's testimony in the Sale Order. On the issue of whether

Fiat ever requested dealership rejections, Manzo - who was in line to receive a ten million dollar

fee if the sale closed - testified as follows (see May 27, 2009 Hearing Transcript at 267):

> Q. But as far as you know, Fiat never made it a condition to its transaction with Chrysler that the dealer network be reduced?
>
> A. Not that I recall.
>
> Q. Do you know of any party-in-interest that has made it a requirement for the sale transaction that the dealer network be reduced?
>
> A. Not that I'm aware of.
>
> *Fiat never made dealer restructuring a condition precedent to the sale closing.*    Without

such a request, the Debtor had no reason to reject Movants' contracts, and could not justify

rejection under the Business Judgment rule.

*Movants Were Precluded From Fully And Fairly Presenting Their Case.*

The Court also erred when it held that Movants were not precluded from fully and fairly

presenting their case:

> "Thus, any allegation concerning a mischaracterization of fact, evidence or law, either by
> the opposing counsel or by the Court does not rise to the level of fraud on the court.
> This flows from the requirement, which applies in the context of a Rule 60(d)(3) motion
> for fraud on the court, that a party show that it has been precluded from fully and fairly
> representing its case. As a party can refute its opposing counsel's characterization during
> the adversary process, it has an opportunity to fully and fairly present its case. In the
> same manner, a party can challenge a court's judgment or opinion by either filing an
> appeal or a timely motion for re-argument. Therefore, such party has an opportunity to
> fully and fairly present its case and any alleged mischaracterization does not rise to the
> level of fraud on the court. Therefore, the Movants' allegations do not constitute a fraud
> on the Court."

*In re Old Car Co*, 2010 Bankr. LEXIS 287 (Bankr. S.D.N.Y. 2010), Appendix A, pg. 23-24.

Again, no authority is cited by the Court, nor could Movants find any authority to support

this assertion.    If the judicial machinery is defiled, no litigant can fairly present their case.

Judge Gonzalez completely contradicts himself here, since he stated earlier in the same opinion

that a showing of improper influence upon the court is enough to establish fraud on the court:

> "Moreover, because a party cannot fully and fairly present its case if the court has been
> improperly influenced, the standard applied to allegations of Rule 60(b)(3) fraud - that a
> party must be shown to have been precluded from fully and fairly representing its case -
> also applies in the context of a Rule 60(d)(3) motion for fraud on the court. *See State
> Street*, 374 F.3d at 176 (citation omitted)."

*In re Old Car Co*, 2010 Bankr. LEXIS 287 (Bankr. S.D.N.Y. 2010), Appendix A, pg. 11.

Accordingly, Movants could not fully and fairly present their case since the Court was

improperly influenced by testimony which does not exist.    Such influence is established by the

false assertion in Footnote 21.    That the time to appeal had already expired when the fraud on

REJECTED DEALERS' BRIEF ON APPEAL - 15

the court was discovered is irrelevant according to the Supreme Court's holding in *Hazel-Atlas*:

> "[E]ven if Hazel did not exercise the highest degree of diligence, Hartford's fraud cannot be condoned for that reason alone...Furthermore, tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant.   It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society.   Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants.   The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud."

Therefore, Judge Gonzalez's assertion that there was no fraud on the court - since Movants had a chance to appeal - is completely erroneous.   That a party may not discover fraud on the court until after the time for appeal has expired was considered by the Supreme Court in *Hazel-Atlas,* where it was held that lack of diligence was not a bar to relief from fraud on the court.   In that case, *nine years* had elapsed before a fraud on the court action was instituted, whereas Movants' Motion to Reconsider was brought only six months after the Rejection Order.

*Fraud On The Court By Debtor's Counsel*.

Instead of quoting to the actual record of the case, Debtor's Counsel - in their Objection Brief - took the extraordinary step of quoting the disputed version of testimony published by the Court in Footnote 21 of the Rejection Opinion rather than quoting directly from Altavilla's transcript.   Instead of basing arguments upon the actual record of the case, Debtor's Counsel *supplemented* the record on their own - and not under oath - by testifying for key witnesses and making reference to statements which do not exist anywhere in the record.   Debtor's counsel created new fraudulent facts out of thin air by adding statements into the record which are not quoted and do not contain citations and do not even exist. Instead of citing to the actual record to challenge Movants' arguments, Debtors' Counsel chose to cite the Court's Rejection Opinion to challenge our argument that the Rejection Opinion contains a fraudulent assertion (see Debtor's

Objection Memo at par. 44, pgs. 25-26):

> "Further, the Dealer Rejection Opinion disproves the Movants' argument on the merits. *The Court's statements therein* [emphasis added] show that the Court did not conceal, mischaracterize or alter Mr. Altavilla's testimony and was fully aware of his statement that Fiat did not perceive a material difference in whether the dealership rejections occurred before or after the closing of the Fiat Transactions, as long as the network restructuring did, in fact, occur as part of the sale transaction."

This statement is fraudulent.    Debtor's Counsel has mysteriously supplemented the record by alleging that Mr. Altavilla's testimony states dealer restructuring needed to occur "as part of the sale transaction".    But nowhere does Altavilla say anything of the sort.    This new assertion is also an intentional fraud upon this Court. Debtor's Counsel makes this claim before the court, when no such testimony exists anywhere in the record. It's a blatant lie.

In support of this lie, Debtor's Counsel states, *"See Dealer Rejection Opinion at 195-97 (containing several references to Altavilla's testimony)."*    But when you visit the Rejection Opinion at 195-197 (referring to *In re Old Carco, LLC*, 406 B.R. 180 (Bankr. S.D.N.Y. 2009), there is no such quote from Altavilla.    Had Altavilla actually made such a statement, Debtor's Counsel would surely cite to a page in the hearing transcript where such testimony could be found.    But there is no such testimony.    Debtor instead relies upon the Court's Opinion - the very thing being challenged in the first place.    This exhibits the judicial machinery breaking down into chaos as the Court's Opinion should not *serve as the citation* to the witness's testimony. If the witness made the statement alleged by Debtor's Counsel, then Counsel is required to cite to the transcript and quote the witness therefrom.    But that would be impossible since no such testimony exists.

Counsel's fabrication is repeated again (on pg. 26 at par. 45 of Debtor's Objection Brief) by their insertion of words into Mr. Altavilla's mouth which he did not utter on the record:

> "Mr. Altavilla's snippet of testimony on which Movants rely merely addressed the issue

of timing — i.e., did the contract designations have to take place before or after closing. Mr. Altavilla testified that either was fine, as long as the restructuring was accomplished as part of the sale transaction."

Altavilla said no such thing.   There is absolutely no support for this false assertion.   It's another intentional fraud upon the Court since Debtor's Counsel knows very well there is no testimony by Mr. Altavilla which states that dealer restructuring had to be "accomplished as part of the sale transaction."   Debtor's Counsel doesn't quote to any such testimony because no such testimony exists. This behavior is the very definition of fraud on the court.

And still, the fraudulent attack upon the record continues on pg. 18, Footnote 23 of the Objection Brief:

"See ...Tr. of May 28, 2009 Hr'g at [488]...(testimony of Peter M. Grady)... stating that, absent rejection of the rejected dealer agreements, Fiat would not have proceeded with the Fiat Transaction)."

But when you go to page 488, no such statement appears.   Pg. 488 concerns an entirely different issue.   In fact, the fictional statement attributed to Mr. Grady does not exist anywhere in the record. So Debtors' Counsel - who appear conveniently allergic to quotation marks - have fabricated testimony and placed it into a witness's mouth.   In fact, Mr. Grady did testify directly on this issue, not at pg. 488, but at pg. 477 of the May 28, 2009 Hearing Tr. and he stated quite clearly that Fiat did *not* request dealer restructuring and that the rejections were *not* done at Fiat's insistence:

Q. But Fiat did not require the rejection of the 789 agreements, did it?

A. No. But Fiat did encourage and buys into a restructuring of the dealer network which includes rationalization.

Q. And this was not done at their insistence, though, was it?

A. It was not done at their insistence, but it was part of what we looked at as an opportunity --

REJECTED DEALERS' BRIEF ON APPEAL - 18

The witness unambiguously stated that Fiat did not request or insist upon dealer restructuring.    Debtor's Counsel has turned this testimony around and provided a fraudulent citation to accompany it. This should not have been tolerated by the Court.    But Judge Gonzalez's response to Movants' allegations of fraud on the court by Debtor's Counsel - in Footnote 13 of the Opinion on Reconsideration - fails to reprimand or take issue with any of the above:

> "13 The Movants also allege that the Debtors committed fraud on the Court by mischaracterizing the record of the case in the Debtors' Objection to the Movants' Reconsideration Motion. If the Movants are raising the issue in the context of the Rejection Order or the Court's Opinion, the Objection came after the issuance of those two documents. Obviously, the Debtors' characterization of the record in the Objection could not have influenced the Court's judgment in issuing the Rejection Order and Opinion. Therefore, in that context, such representations are not a fraud on the Court. If the representations are raised in the context of the Reconsideration Motion, the Movants had an opportunity to refute any such characterizations in the context of the Motion to Reconsider and, therefore, the characterizations do not rise to the level of fraud on the Court."

*In re Old Car Co*, 2010 Bankr. LEXIS 287 (Bankr. S.D.N.Y. 2010), Appendix A, pg. 24.

Movants would point out that we accused the Debtor's *Counsel* of committing fraud on the Court, not the Debtor.    Fraud by a party is ordinary fraud that does not generally fall under "fraud on the court" which usually requires the fraud by accomplished by an officer of the court. *Workman v. Bell* at 852.

The fraud by Debtor's Counsel is much more egregious than simple mischaracterization of testimony, it is a *fabrication* of testimony.    Debtor's Counsel fabricated multiple instances of testimony in their Objection Brief and then relied upon the fabrications for their argument.    This is intentional fraud.    And Debtor's Counsel are following the Court's inspiration from Footnote 21 where Judge Gonzalez fabricated an assertion which does not exist in the record.    The judicial machinery could not possibly be more corrupted.

REJECTED DEALERS' BRIEF ON APPEAL - 19

The Court has failed to acknowledge there is an ongoing record in this case which did not end with the Court's Rejection Opinion.    The record continues through this process and it grows with each new filing.    The fraud has been perpetrated upon the entire record of the case.    And Judge Gonzalez continued to obscure the effect of fraud on the court by Debtor's Counsel when he stated:

> "If the representations are raised in the context of the Reconsideration Motion, the Movants had an opportunity to refute any such characterizations in the context of the Motion to Reconsider and, therefore, the characterizations do not rise to the level of fraud on the Court."

*In re Old Car Co*, 2010 Bankr. LEXIS 287 (Bankr. S.D.N.Y. 2010), Appendix A, pg. 24.

Judge Gonzalez appears to be stating that if fraudulent statements were made by Debtor's Counsel, Movants had the chance to refute the statements and therefore there was no fraud on the Court.    This makes no sense and is not supported by any authority.    Since the statements by Debtor's Counsel were actually fraudulent, if Judge Gonzalez accepted and relied on those statements, then there was fraud on the Court regardless of whether Movants had the chance to address the fraud.    The Opinion on Reconsideration by Judge Gonzalez fails to state whether he relied on the fraudulent statements by Debtor's Counsel.    Although it is not possible to determine whether the Court was influenced by the fraud in the Reconsideration Order and Opinion, the fraudulent statements by Debtor's Counsel have not been struck from the record and they continue to defile review of the underlying matter.

*Conclusion.*

Footnote 21 is clearly an egregious judicial miscarriage of justice.    Should Footnote 21 be sanitized by the District Court, it will stand as a brutal attack on the normal judicial function by setting a frightening standard.    For example, if a witness testifies, "I *did not see* the accused shoot the victim", the court cannot be allowed to issue a finding of fact indicating that the

witness said the opposite, "I *saw* the accused shoot the victim."    There is no difference between this example and the fraud of Footnote 21.    Should we allow judges to change the testimony of witnesses, we will be forfeiting all notions of justice to fraud.    Judge Gonzalez must be reversed and Footnote 21 corrected, or the standard set will mean terminal cancer for justice.

## 2.    MOVANTS' MOTION UNDER F.R.C.P. RULE 60(b)(1) IS TIMELY.

Movants' Motion To Reconsider also plead various issues of mistake attributed to Judge Gonzalez concerning the application of law and facts to the issue of whether the business judgment test had been met regarding the rejection of Movants' contracts.

*F.R.C.P. Rule 60(b)(1):*

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

*F.R.C.P. Rule 60(c)(1):*

A motion under Rule 60(b) must be made within a reasonable time — and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.

Movants brought the Motion to Reconsider approximately six months after the June 9, 2009 Rejection Order and the June 19, 2009 Rejection Opinion, well within the one year statute of limitations.    From June 9, 2009, when the Court issued its rejection Order, the rejected dealers had exactly ten days to file a notice of appeal (recently increased by statute to fourteen days).    But Judge Gonzalez failed to issue his Rejection Opinion until June 19, 2009, exactly ten days after the Rejection Order was issued.    Therefore, the original time to appeal had basically expired before any grounds for appeal could be properly identified in the Rejection Opinion.

"Usually, a Rule 60(b)(1), (2), or (3) motion brought anytime within one year will be

timely, although some motions made within one year have been found to be unreasonably late."

*Motion Practice,* Fourth Edition at 24-15 (2002 Supplement), by David F. Herr, Roger S.

Haydock, and Jeffrey W. Stempel.    In its discussion of Rule 60(b)(1), the United States

Supreme Court in *Pioneer Inv. Servs. v. Brunswick Assocs.* 507 U.S. 380 (1993) stated, "...Rule

60(b)(1)... permits courts to reopen judgments for reasons of "mistake, inadvertence, surprise, or

excusable neglect," but only on motion made within one year of the judgment."    The Supreme

Court in *Pioneer* did not indicate that the one year statute was an *outer* limit for motions brought

under 60(b)(1).

> Judge Gonzalez, in his Opinion on Reconsideration, stated:

> "The Second Circuit's view is that, if a court has made a mistake of law or fact, it may
> make "good sense" to permit the court to correct such error and thereby avert the need for
> an appeal, but only if the motion for reconsideration has been made within the
> permissible time to appeal. *See Schildhaus v. Moe*, 335 F.2d 529, 531 (2d Cir. 1964)."

*In re Old Car Co*, 2010 Bankr. LEXIS 287 (Bankr. S.D.N.Y. 2010), Appendix A, pg. 4.

> Judge Gonzalez followed up on this point a few pages later:

> "To prevent Rule 60(b)(1) from being used to circumvent the time limitations for an
> appeal, the Second Circuit has determined that when a 60(b)(1) motion concerns a court's
> own substantive error, such motion "may not be made after the time for appeal has
> elapsed." *Vesco*, 556 F.2d at 670 (citing *Schildhaus*, 335 F.2d at 531)."

*In re Old Car Co*, 2010 Bankr. LEXIS 287 (Bankr. S.D.N.Y. 2010), Appendix A, pg. 5.

> While this is the general rule in the 2d Circuit, that Court indicated in, *In re Texlon Corp.*,

596 F.2d 1092, 1100 (2d Cir. 1979), that the rule might be subject to exceptions:

> "Even according to Professor Moore's view, the motion here would have been untimely
> with respect to a contested civil action since the "reasonable time" requirement of
> F.R.Civ.P. 60(b) would be read as requiring a motion for relief from judicial mistake to
> be made within the time allowed for appeal. See 7 Moore, Supra, at 268; cf. 11 Wright &
> Miller, Supra, at 178. The treatises understandably do not discuss whether such a limiting
> principle should apply to an *ex parte* order in bankruptcy."

> Accordingly, such a *limiting principle* should not be applied when fraud on the court has

played a factor in the delay.    Footnote 21 is so egregious and damaging to the cause of justice that Movants should not be prejudiced by it.    While the ordinary practice requires a 60(b)(1) motion for relief due to judicial error to be brought before the time to appeal has expired, fraud on the court may be brought at any time.    Movants' 60(b)(1) arguments are intermingled with the false assertion of Footnote 21.    Therefore, no limiting principle should be applied here, especially where Movants brought the Motion to Reconsider well within the statutory one year limitation.

*Merits of the 60(b)(1) Motion.*

For the most part, Judge Gonzalez did not address the merits of Movants' Motion To Reconsider under 60(b)(1) with the exception of the following statement:

> "While the Movants argue that the Court overlooked certain facts and case law, they then cite to the Court's reference to the same facts and cases in the Court's Opinion. In other words, for the basis of what they allege the Court overlooked, the Movants cite to the Opinion itself."

*In re Old Car Co*, 2010 Bankr. LEXIS 287 (Bankr. S.D.N.Y. 2010), Appendix A, pg. 20.

This statement is unfortunately *very* misleading.    Movants' Memo cited numerous examples of law and facts which the court completely failed to mention in its Dealer Rejection Order and Opinion.    Judge Gonzalez provided no other discussion as to this assertion, and he did not address any of the facts and authorities cited by Movants in their Memorandum as having been overlooked by the Court.

*Conclusion.*

The timing of Movants' Motion To Reconsider was influenced by the confusion sewn from the false assertion in Footnote 21 of the Court's June 19, 2009 Rejection Opinion. Therefore, the limiting principle requiring a Rule 60(b)(1) motion for judicial error to be brought within the time to appeal should not be imposed.

REJECTED DEALERS' BRIEF ON APPEAL - 23

**3.    THE COURT ERRED WHEN IT DID NOT INVOKE ITS INHERENT POWERS TO RECONSIDER THE JUNE 9, 2009 REJECTION ORDER AND JUNE 19, 2009 REJECTION OPINION.**

The Second Circuit in *Texlon* at 1100, while denying a Rule 60(b)(1) request for relief due to judicial error, addressed the inherent powers issue, stating:

> "However, the trustee is entitled to prevail upon another ground. In *Wayne United Gas Co. v. Owens-Illinois Glass Co*., 300 U.S. 131, 137-38, 57 S. Ct. 382, 386, 81 L. Ed. 557 (1937), the Supreme Court held that a district court sitting in bankruptcy could in its discretion rehear a cause even after the expiration of the period allowed for appeal "if no intervening rights will be prejudiced by its action" and that if the court rehears the petition "upon the merits", the time to appeal would run from its grant or denial."

The Court should have invoked its inherent powers to reconsider the Rejection Order. But Judge Gonzalez stated that intervening rights had accrued which made it impossible for him to reconsider the Rejection Order.    This is erroneous on the law and the facts.    The Second Circuit in *Texlon* at 1101 (citing *7 Moore, Federal Practice, Part 2*, P 81.04(1) at 81-56) stated:

> "A bankruptcy proceeding is one continuous, often long, proceeding, within which many other controversies and proceedings occur during the course of administration. There is practical utility in the application of a rule which permits the vacation or modification of bankruptcy orders where subsequent events presented during administration demonstrate the necessity therefor; and to do so would not be inequitable. Nor does the relatively unlimited power thus invoked raise any unanswerable objections of hardship or uncertainty when it is applied pursuant to well established bankruptcy principles."

The egregious false assertion contained in Footnote 21 *requires* the Court to invoke its inherent powers.    Bankruptcy courts, as courts of equity, cannot tolerate the changing of witness testimony by a judge or a litigant.

The Second Circuit in *Texlon* at 1101 also discussed the issue of intervening rights, stating:

> "While it may be that MHCC would not have engaged in these transactions but for its hope of securing a preferred position for the pre-petition debt, this is not the kind of prejudice that bars reconsideration. The test is whether, upon granting the motion to reconsider, the court will be able to reestablish the rights of the opposing party as they stood when the original judgment was rendered, see, E. g., *Wharton v. Farmers &*

REJECTED DEALERS' BRIEF ON APPEAL - 24

*Merchants Bank of Green Ridge*, 119 F.2d 487, 489 (8 Cir. 1941); *In re Technical Marine Maintenance Co*., 169 F.2d 548, 553 (3 Cir. 1948). Almost by definition it cannot be necessary for reconsideration that the court should be able to place a losing party in the same position as if there had been none."

The test is: *whether the parties can be returned to the state they were in prior to the Rejection Order having been issued*.    Neither the Court nor the Debtor have forwarded any reason why, by granting Movants' Motion to Reconsider, intervening rights - as defined by the Court in *Texlon* - will be prejudiced.

Movants' - should approval of their contract rejections be withdrawn by the Court retroactively - will be entitled to administrative claims against both, the two billion dollar purchase price received by the Debtor from New Chrysler, and/or the remaining assets and funds available to Debtor since the first lien lenders were paid off.

<u>Conclusion</u>.

The Court should have invoked its inherent power to reconsider prior orders since no intervening rights had vested and the Movants were extremely prejudiced by the false assertion in Footnote 21.

Respectfully submitted this 12th day of April, 2010.


    //STEPHEN PIDGEON //_____
    STEPHEN PIDGEON, Esq.
    LEO C. DONOFRIO, Esq.
    3002 Colby Avenue, Suite 306
    Everett, Washington 98201
    (425)605-4774
    Attorneys for Appellants


REJECTED DEALERS' BRIEF ON APPEAL - 25