**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re: CHRYSLER, LLC, et al,                    Case No. 10 CV 2493

                    Debtor,          AFFIDAVIT OF STEPHEN PIDGEON IN RESPONSE
                               TO THE AFFIDAVIT OF JAMES ANDERER AND
                               JOHN GENTILE

STEPHEN PIDGEON, on oath and subject to the laws of perjury, as an officer of this

court, with personal knowledge of the facts set forth below, now declares as follows:

We advise the court that we are in the difficult situation of negotiating the interests of our

multiple clients, and are not in a position to disclose client or former client confidences and

secrets.

James Anderer is the authorized representative of Island Jeep, who is now represented by

Bellavia Gentile & Associates, LLP (hereafter, "Bellavia Gentile").    This is the law firm that

first represented Island Jeep Incorporated in the instant bankruptcy action, and the firm that

failed to file any Notice of Appeal or Motion for Reconsideration on behalf of Island Jeep and

other rejected dealers who are represented in this action during the course of their representation

at the bankruptcy court.    We were retained approximately four months after the 30 day period

to file a notice of appeal had expired.

Contrary to the statement made in the affidavit, I have never advised any client to not

accept a settlement from any settling agency in respect of arbitration. I advised the client that if

he signed the agreement, then, in my professional opinion, based upon the terms he forwarded to

me, he would, according to black letter claim preclusion precedent, effectively also be releasing

Old Chrysler in the appeal pending before this honorable court.    By email of June 7, 2010 (see

attached Exhibit A) the client informed my office as follows:

*To:*
*"leo donofrio" <leo_donofrio2000@yahoo.com>*
*Cc:*
*"steve pidgeon" <attorney@stephenpidgeon.com>*

*Guy's,*

*I am getting close to a settlement with chrysler. We have a verbal agreement as of sat night. I still have not seen it in writing . I made it crstal clear that it cannot interfere with our lawsuit or any future lawsuits, or we will not even think of settling. I will keep you informed and not sign anything until you ok it.*

*Jim*

Since the client had expressed his absolute desire not to settle the case with Old Chrysler pending appeal, the scope of my inquiry was to determine whether the settlement terms offered by New Chrysler to the client would effectively also settle with Old Chrysler.    Another scope of inquiry concerned whether such a settlement between one client would affect the rights of other clients in respect of this action.    I have a duty to my clients to ascertain whether such settlement terms would compromise their rights in this court, specifically, whether the terms of a settlement would foreclose any claims they may have in this action.

Initially, Island Jeep notified another client in our group that he was about to settle through Bellavia Gentile with Chrysler Group, LLC, as identified in Anderer's and Gentile's affidavit.    We requested from Bellavia Gentile a copy of any signed settlement agreement that Island may have executed, in order to properly advise our client whether or not he could remain in the action before this court.    However, it was repeated to my office over and again that no settlement agreement had been signed.    It was not until June 29, 2010 that this office received any notice that a settlement agreement had been signed, and only by means of the Affidavit of James Anderer and the Declaration of John Gentile.

It had been our strategy, expressed to the client, James Anderer by email of June 17, 2010 (see attached Exhibit B) that since he was receiving legal advice from Bellavia Gentile that conflicted with our advice concerning whether the proposed settlement agreement would end his appeal against Old Chrysler, to make a motion for declaratory judgment before this Court which would determine whether the proposed settlement agreement, if signed, would end the current appeal against Old Chrysler.    That letter clearly laid out our legal position that if the client should sign the agreement he would be subject to *res judicata* in the current appeal against Old Chrysler.    The letter now attached to this affidavit has been redacted to conceal confidential terms of the agreement.    Regardless, our concern about the res judicata issue was also focused upon what was *not* in the settlement agreement.    The settlement agreement failed to contain an express statement which allowed the suit against Old Chrysler to continue.    In our letter to the client and a subsequent memorandum of law (which was not billed to the client), we explained the holding in the *Pactiv* case.    Our legal opinion was therefore to advise the client that if he wished to settle with New Chrysler and to also preserve his appeal with Old Chrysler, he should request that a clause be added to the settlement agreement which expressly allowed the appeal against Old Chrysler to continue.

The client responded on June 16, 2010 as follows:

> *RE: thoughts 3*
> *Thursday, June 17, 2010 7:05 AM*
> *From: This sender is DomainKeys verified "james anderer"*
> *<hurricane26@yahoo.com>*
> *To: "Leo Donofrio" <leo_donofrio2000@yahoo.com>*
> *Cc:"steve pidgeon" <attorney@stephenpidgeon.com>*
>
>
> *Leo,*
>
> *Ok, Thanks for reply. Sorry for tone of letter, but I am getting some pretty*

*nasty phone calls frome plantiffs and as usual I seem to be in the middle and don't*

*know who's right. I will try to have that sentence added to settlement and we will*

*see what judge say's.*

> *Jim*

The verifies that the client was comfortable with our strategy at that time.    We then

prepared a motion for declaratory judgment and brief for submission to this court on the

controversy regarding claim preclusion.    However, by letter of June 17, 2010 we were informed

that we should not file the declaratory judgment motion by Gentile Bellavia.    And we were also

instructed not to contact our client on this issue by the following portion of their letter:

Stephen Pidgeon, Esq.
Page Four
June 17, 2010


        Please also be advised that all further communications solely related to the
issue of the Island settlement should be solely directed to this law firm. All other
communications may continue directly with Mr. Anderer as he wishes for your firm to
continue to prosecute his claims.

                        Very truly yours,

                        BELLAVIA GENTILE & ASSOCAITES, LLP

                        By: _____
                            LEONARD A. BELLAVIA

As I stated in my earlier affidavit, I was instructed to cease communication with Island

Jeep as to certain matters.    The statement above is a true and accurate copy of that portion of the

letter I received from Bellavia Gentile on June 17, 2010.    It indicates that "all further

communications solely related to the issue of the Island settlement should be solely directed to

this law firm."    Under the accepted rules of professional conduct, such an instruction requires

me to cease communication with Island Jeep "as to certain matters," namely "communications

solely related to the issue of the Island settlement."

The veracity of the entire Anderer and Gentile affidavits are therefore at issue. We note for the record that Anderer and Gentile have exposed to this court for the first time that Island Jeep has entered into a settlement agreement with the Chrysler Group, LLC, and that the terms are confidential.

As stated above, we were very concerned that the signing of the settlement agreement would operate as *res judicata* before this court.    We were concerned whether such an agreement would settle all claims related to the Rejection Order of June 9, 2009, even against Old Chrysler; and whether such an agreement would settle on behalf of other Rejected Dealers.    Once again, we do not feel it would be proper to release the terms of the agreement since the client has not authorized us to do so, but we feel confident in our legal assessment of the terms and the *res judicata* effect clients signing such an agreement would be subject to.    For this reason, we developed a memorandum on the subject, particularly looking at a lead case in the Federal Circuit which applied Second Circuit law called *Pactiv Corp. v. Dow Chemical*, 449 F.3d 1227 (Fed. Circ. 2006, which stated:

> "Turning to the merits, the defense of claim preclusion will generally be available where the asserted claim was, or could have been, raised in a prior action between the parties which has been adjudicated on the merits. *N. Assurance Co. of Am. v. Square D Co.*, 201 F.3d 84, 87 (2d Cir.2000); *Hallco Mfg., Co. v. Foster*, 256 F.3d 1290, 1294 (Fed.Cir.2001). A dismissal with prejudice is a judgment on the merits for purposes of claim preclusion. *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345 (2d Cir.1995); *Hallco Mfg., Co.*, 256 F.3d at 1297. As the first action between Dow and Pactiv was dismissed with prejudice, it is a judgment on the merits for claim preclusion purposes."

After looking at this authority, we became concerned that a Rejected Dealer who entered into a settlement agreement would have settled on the merits of the case before this court, raising issues whether other parties' claims in this action would also be foreclosed.    The Court in Pactiv

stated on this issue:

> "Here, Pactiv does not dispute that under general claim preclusion principles, it would be barred from asserting the claims at issue. Instead, Pactiv argues that an exception to claim preclusion applies…. An exception to the normal rules of claim preclusion exists when '[t]he parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein ....' Restatement (Second) of Judgments § 26(1)(a) (1982); see also 18 Charles Allan Wright & Arthur R. Miller, Federal Practice and Procedure § 4415, at 354 (2d ed. 2002) ('[C]ourts have expressed willingness to honor an express agreement between the parties that an action on one part of the claim will not preclude a second action on another part of the same claim ....'). Thus, the parties can, in a separate agreement…reserve the right to litigate a claim that would otherwise be barred by res judicata. Restatement (Second) of Judgments § 26, cmt a ('So also the parties may enter into an agreement, not directed to a particular contemplated action, which may have the effect of preserving a claim that might otherwise be superseded by a judgment ....'). But that reservation must be express."

The Court in *Pactiv* also stated:

> "Initially we note that Pactiv has the standard backwards: it urges that '[t]he plain and express language [of the 1998 Agreement] does not preclude Pactiv from participating in [future litigation].' Appellant's Br. at 23. The question is not whether the 1998 Agreement precluded Pactiv from future litigation; the question is whether the 1998 Agreement expressly permitted Pactiv to participate in future litigation. **We conclude that it did not**." (Emphasis added.)

It became our understanding that *Pactiv* stood for the black letter law that, unless the settlement agreement *expressly* states that a Rejected Dealer may proceed against a party referenced in the agreement, then such a party may not ever proceed against that party for a claim related to the subject matter of the settlement agreement. One can assume that any agreement with Chrysler Group LLC would necessarily reference the Rejection Order of June 9, 2009, since that is the very source of the grievance of any party in contrary interest, although we have no knowledge of the terms of any final settlement between Chrysler Group LLC and Island Jeep. In fact, Anderer's affidavit and the subsequent similar declaration by John Gentile of similar claims inform us for the first time that Island Jeep has settled with Chrysler Group LLC.

We had previously communicated, prior to learning about the signed settlement

agreement, to our client, that in our opinion, the other Rejected Dealers needed to know if their case would be affected by, compromised, or otherwise dismissed as to all dealers who sign such a settlement agreement.   Given that we were in a confidential relationship with Island Jeep at the time, we believed that at a bare minimum, we should have been allowed a review of the terms to see if it affected the rights of our other clients.

I made such a request to John Gentile, and the request was denied.   In addition, I had a representation from Mr. Bellavia his partner that we were to direct all communications "solely" to his law firm concerning the arbitration, and when I asked him to have Jim Anderer confirm this representation in writing, that was also denied.

Island Jeep has apparently settled with Chrysler Group, LLC, and has done so pursuant to a final agreement that we have not reviewed or even seen.   We did not disclose this settlement to the court – James Anderer and his law firm Bellavia Gentile & Associates, LLP did.

Pursuant to our representation agreement that states *"[i]n the event that we reach an impasse as to our legal advice because we have come to disagree on our strategy concerning your case, you agree that we may withdraw from your case with three days notice and substitute other counsel as you may instruct immediately."*

Because the client expressed to us his absolute intention not to settle with Old Chrysler, our chosen course of action was to make a motion for declaratory judgment before this court. We were forbidden to do that by the client's other counsel.   Therefore, we had no choice but to withdraw as counsel since our legal advice to the client was being ignored; we were being ordered by other counsel how to proceed in this action; and we were told not to discuss the issue with our client.   It is abundantly obvious that another law firm is directing the legal strategy of Island Jeep, which is not only directly contrary to our strategy, but one that may jeopardize the

claims of our entire group.    It is for this reason that we had no choice but to withdraw from

representation, as we can no longer make claims before this court that the representations we

make on behalf of Island Jeep are:

      1) not presented for any improper purpose;

      2) warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

      3) factual contentions that have evidentiary support, or likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

      4) denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

      We no longer know, and, equally important, we can't even make inquiry.    In our view,

this is an impasse consistent with our representation agreement.

      For these reasons, we respectfully ask this court to grant our motion to withdraw from

representing Island Jeep Incorporated, and to grant the remainder of relief requested in our

motion.

  Respectfully submitted this 30th day of June, 2010.

                      __//STEPHEN PIDGEON //_____
                      STEPHEN PIDGEON, Esq.
                      LEO C. DONOFRIO, Esq.
                      3002 Colby Avenue, Suite 306
                      Everett, Washington 98201
                      (425)605-4774

**EXHIBIT A**

Subject: settlement with new chrysler
From: james anderer <huricane26@yahoo.com>
Date: Mon, June 07, 2010 8:15 am
To: leo donofrio <leo_donofrio2000@yahoo.com>
Cc: steve pidgeon <attorney@stephenpidgeon.com>

Guy's,

 I am getting close to a settlement with chrysler. We have a verbal agreement as of sat night. I still have not seen it in writing . I made it crstal clear that it cannot interfere with our lawsuit or any future lawsuits, or we will not even think of settling. I will keep you informed and not sign anything until you ok it.

Jim

**EXHIBIT B**
--- On **Thu, 6/17/10, james anderer <*huricane26@yahoo.com*>** wrote:


From: james anderer <huricane26@yahoo.com>
Subject: RE: thoughts 3
To: "Leo Donofrio" <leo_donofrio2000@yahoo.com>
Cc: "steve pidgeon" <attorney@stephenpidgeon.com>
Date: Thursday, June 17, 2010, 7:05 AM

Leo,

Ok, Thanks for reply. Sorry for tone of letter, but I am getting some pretty nasty phone calls frome plantiffs and as usual I seem to be in the middle and don't know who's right. I will try to have that sentence added to settlement and we will see what judge say's.

Jim

--- On **Thu, 6/17/10, Leo Donofrio <*leo_donofrio2000@yahoo.com*>** wrote:


From: Leo Donofrio <leo_donofrio2000@yahoo.com>
Subject: RE: In re Chrysler - Declaratory Judgment
To: "james anderer" <huricane26@yahoo.com>
Date: Thursday, June 17, 2010, 12:38 AM

Jim,

No worries on the conversation of the other day.  It's a stressful time.

I also concur with everything Steve wrote.  Furthermore, the request for declaratory judgment is not an argument for or against either position.  There is nothing to argue.  I am an attorney who has a responsibility to present honest facts and law before the court.  [redacted].

We did not draft that agreement and we have no power over it except to inform you that it is, in fact, going to end your appeal rights.  If Steve and I were to advise you otherwise we would be negligent in doing so.  You hired us to be good lawyers.  I have no doubt whatsoever that all dealers who sign the agreement will be forever estopped from any claims arising out of rejection.  If your other counsel are advising you differently, then they are, in our professional opinion, absolutely wrong.


Additionally, I can't argue a fraudulent legal theory on your behalf before Judge Hellenfield [redacted].  Furthermore, attorneys are legally and ethically required to inform the court of the relevant legal precedent regardless of the effect such precedent has on the case.

The law is very clear on this issue. [redacted]. Because your other counsel is disputing that legal analysis, the Court must be notified and the Court must be notified. If we, as your attorneys, continue to represent to the Court that you have not dismissed your appellate claims, knowing in our professional opinion that you have, then the Court will not be pleased at all and that could mean trouble.

The Court must be appraised since this effects the Court as well as the litigants and attorneys,

The best thing for us to do is to submit the issue to the court and if the court is willing to allow your appeal to proceed against Old Chrysler despite your signing the agreement, then the Court will issue a ruling stating that. But that will not happen because there is absolutely no doubt whatsoever that you are signing away your appeal [redacted].

Steve and I believe we are doing what is in the best interest for our clients. This is not a close call and there is no wiggle room. [redacted].

We will file the declaratory judgment action tomorrow.

As to our fee, if you do not believe we have contributed to this settlement agreement, then it should be no problem for your other attorneys to have a single sentence added to the agreement which preserves your rights as to the docket number on file in the District Court before Judge Hellenfield. Simply add one line to the settlement agreement which expressly allows the case to proceed against Old Chrysler. If New Chrysler isn't trying to protect Old Chrysler from the appeal, they should have no problem adding such a clause. By taking action to preserve our fee under these terms, we believe we are giving you the best bargaining chip available to preserve your rights in the appeal.

But if New Chrysler won't change the agreement to add that one clause, then you will be on notice that they have bargained for your waiver of all rights against Old Chrysler.

If you would like to settle this issue before we do file, we are willing to settle for less than the full twenty percent But until such an agreement is reached we are forced to protect our fee since your attorneys have informed us that they have counseled you that we are not entitled to our fee.

As to the tone of this letter, our conduct has been completely ethical. If you don't think that is the case, you may take appropriate action. If you did not pay your fees to other counsel, they would proceed against you for fees owed. This is nothing new under the sun. Clients try to get out of paying their attorneys all the time.

As stated at the start of this letter, your tone the other day does not bother me, but the fact that you have taken the position that our work has not contributed [redacted] has genuinely insulted me. You went on Fox News and stated that you were so fortunate to have found Steve and I, "world class attorneys". I have never heard anything but praise from you, both on national TV and in emails and phone conversations. You were very impressed with us until [redacted] and suddenly things have changed.

Such is life. We should all be celebrating a victory, but that's not the case.

Very Truly Yours,

Leo Donofrio for the firm of Pidgeon & Donofrio


--- On **Wed, 6/16/10, james anderer <_huricane26@yahoo.com_>** wrote:


From: james anderer <huricane26@yahoo.com>
Subject: RE: In re Chrysler - Declaratory Judgment
To: "Stephen Pidgeon" <stephen.pidgeon@comcast.net>
Cc: "leo donofrio" <leo_donofrio2000@yahoo.com>
Date: Wednesday, June 16, 2010, 11:07 PM