# EXHIBIT B

# 10-3933

--------------------------------------------------------------------------------

# 𝕌𝕟𝕚𝕥𝕖𝕕 𝕊𝕥𝕒𝕥𝕖𝕤 ℂ𝕠𝕦𝕣𝕥 𝕠𝕗 𝔸𝕡𝕡𝕖𝕒𝕝𝕤

## FOR THE SECOND CIRCUIT

Docket No. 10-3933

_____

Scotia Motors Incorporated, Golden Motors, Pen Motors Incorporated, Mauro Motors Incorporated, Bollinger's Incorporated, Brother's Motors Incorporated/Diamond Dodge, St. Pete Jeep Chrysler, Rallye Auto Plaza Incorporated, Neil Huffman Incorporated, Bill Spurlock Dodge, Incorporated, Rock of Texas Automotive Incorporated, South Holland Dodge, Pride Chrysler Jeep, Thomas Dodge Corporation, Taylor-Parker Motor Company, Evansville Chrysler Incorporated, Alley's of Kingsport, Incorporated, Augusta Dodge, Incorporated, M&M Dodge, Incorporated, Scholtes Auto World, Axelrod Chrysler, Incorporated, Fiore Chrysler Jeep/Jim Fiore Motors, Faws Garage, Lakes Chrysler Jeep Limited, Van Burkleo Motors Incorporated, Fisher Motors Incorporated, Courtesy Nissan Incorporated, Key Buick-Pont-AMC Incorporated, Southeast Automotive, Extreme Jeep Incorporated, Bob Taylor Jeep Incorporated, Ambassador Auto Service, Incorporated, Mueller Chrysler, Incorporated, Wilson Dodge Nissan, Preston Chrysler Jeep, Fort Morgan Auto Center Incorporated, Superior Motors Incorporated, WACO Dodge Sales Incorporated, Archer Chrysler Jeep, D Patrick Incorporated, Brehm Group Incorporated, Birmingham Chrysler Plymouth Incorporated, Clarkston Motors Incorporated, Berlin Chrysler Incorporated, El Dorado Motors, Russo Group Enterprises Incorporated, Fox Hills Chrysler Jeep Incorporated, Orleans Dodge Chrysler Jeep Incorporated, Walker Motors Incorporated, Monicatti Chrysler Jeep Sales, Shoemaker's Jeep Incorporated, Snow, LLC/Champion Chrysler, Ray's Ford-Mercury Incorported/Ray's CDJ, Barber Bros Motor Company Incorporated, Van Lieshout & Simon Dodge, Drake Chrysler, Tenafly Chrysler Jeep Incorporated, Wycoff Chrysler Incorporated, Terry Chrysler Jeep Incorporated, Sowell Automotive Incorporated, Shout Shore Chrysler, Cimino Brothers Ford Incorporated, Wilson

1

Dodge Incorporated, Kalmar Motor Sales, Reuther Investment Company, Continental Chrysler Jeep Incorporated, MT Clemens Dodge Incorporated, Golick Chrysler Jeep Incorporated, Bruce Campbell Dodge Incorporated, Clayton Amerman Incorporated, Island Jeep Incorporated, Auffenberg Chrysler Incorporated, Duvall Chrysler Dodge Jeep Incorporated,

Movants - Appellants

v.

Old Carco LLC, FKA Chrysler LLC, AKA Chrysler Aspen, AKA Chrysler Town & Country, AKA Chrysler 300, AKA Chrysler Sebring, AKA Chrysler PT Cruiser, AKA Dodge, AKA Dodge Avenger, AKA Dodge Caliber, AKA Dodge Challenger, AKA Dodge Dakota, AKA Dodge Durango, AKA Dodge Grand Caravan, AKA Dodge Journey, AKA Dodge Nitro, AKA Dodge Ram, AKA Dodge Sprinter, AKA Dodge Viper, AKA Jeep, AKA Jeep Commander, AKA Jeep Compass, AKA Jeep Grand Cherokee, AKA Jeep Liberty, AKA Jeep Patriot, AKA Jeep Wrangler, AKA Mopar, AKA Plymouth, AKA Dodge Charger,

Debtor - Appellee.
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------
BRIEF FOR THE
REJECTED CHRYSLER DEALERS
----------------------------------------------

Stephen Pidgeon, Attorney
Leo C. Donofrio, Attorney

PIDGEON & DONOFRIO GP
Old Federal Building
3002 Colby Avenue, Suite 306
Everett, Washington 98201
(425)605-4774 telephone
(425)818-5371 facsimile
*Attorneys for the Rejected Dealers*

2

**CORPORATE DISCLOSURE STATEMENT**
**Pursuant to Fed.R.App.P. 26.1**

Pursuant to Fed.R.App.P. 26.1, no publicly traded corporation owns 10% or more of the stock in any of the corporations or entities of the appellants.

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Statement of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Statement of Issues Presented for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

1. Whether The District Court Erred And Abused
   Its Discretion In Determining That There Was
   No Fraud On The Court Pursuant To Rule
   60(d)(3) By Holding That The Bankruptcy
   Court's Rejection Opinion At Footnote 21 Did
   Not Contain A False Statement ? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

a. Fraud On The Court By Debtor's Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

2. Whether The District Court Erred And Abused
   Its Discretion In Dismissing The Rejected Dealers'
   Appeal As Untimely? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Certification pursuant to Fed.R.App.P.
32(a)(7)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

# TABLE OF AUTHORITIES

PURSUANT TO "BLUE BOOK" RULE 10.7, APPELLANT'S CITATION OF CASES DOES NOT INCLUDE "CERTIORARI DENIED" DISPOSITIONS THAT ARE MORE THAN TWO YEARS OLD.

## CASES

*Batac Dev. Corp. v. B & R Consultants, Inc.,*
No. 98 Civ. 721 (CSH), 2000 U.S. Dist. LEXIS 3695,
 at *8-9 (S.D.N.Y. Mar. 22, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Batac Dev. Corp. v. B & R Consultants, Inc.*
No. 03-948, 2010 WL 45553
*at * 2,* ___ F.Supp. ___, ____ (D. D.C. 2010) . . . . . . . . . . . . . . . . . . . . . . 26, 27

 *Bowie v. Maddox*
 540 F. Supp. 2d 204 –
 Dist. Court, Dist. of Columbia 2008 . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Bullock v. United States*
721 F.2d 713, 718 (10th Cir.1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Campaniello Imports, Ltd. v. Saporiti Italia Sp.A.*
117 F.3d 655, 661 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

*Competex, S.A. v. Labow*
*783 F.2d 333, 335* (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

*Cooter & Gell v. Hartmarx Corp.*
496 U.S. 384, 405, 110 L. Ed. 2d 359,
110 S. Ct. 2447 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Envirotech Corp. v. Amstar Corp.*
48 F.3d 1237 (Fed. Circ. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Fleming v. N.Y. Univ.*
*865 F.2d 478, 484 (2d Cir. 1989)* . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Gleason v. Jandrucko*
*860 F.2d at 559* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Grace v. Bank Leumi Trust Co.*
443 F.3d 180, 187 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hadges v. Yonkers Racing Corp.*
*48 F.3d 1320, 1325* (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*
322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944) . . . . . . . . . . . . . . . . . . . . . . 17, 26, 28, 30

*In re Old Car Co.*
2010 Bankr. LEXIS 287 (Bankr. S.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . 17

*In re Old Carco, LLC*
406 B.R. 180 (Bankr. S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . 24

*Milanese v. Rust-Oleum Corp.*
244 F.3d 104, 110 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Nemaizer v. Baker*
793 F.2d 58, 61 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*LinkCo, Inc. v. Naoyuki Akikusa*
*615 F. Supp. 2d 130, 135-37 (S.D.N.Y. 2009)* . . . . . . . . . . . . . . . . . . 28, 29

*Linko, Inc., v. Naoyuki Akikusa*
2010 U.S. App. LEXIS 3498 (2d. Cir. 2010) . . . . . . . . . . . . . . . . . . . . 29

*Standard Oil Co. of Cal. v. United States*
429 U.S. 17, 97 S. Ct. 31, 50 L. Ed.2d 21 (1976) . . . . . . . . . . . . . . . . . 17, 26

*United States v. Beggerly*
524 U.S. 38, 47, 118 S. Ct. 1862,
141 L. Ed. 2d 32 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Weldon v. United States*
*225 F.3d 647, 2000 WL 1134358 at \*1 (2d Cir. 2000)*
*(unpublished summary order)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Workman v. Bell*
245 F.3d 849, 852 (6th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 22

*Zervos v. Verizon Wireless New York, Inc.*
252 F.3d 163, 168-169 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . 17

**RULES**

Fed.R.Civ.P. Rule 60(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Fed.R.Civ.P. Rule 60(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Fed.R.Civ.P. Rule 60(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Fed.R.Civ.P. Rule 60(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Fed.R.Civ.P. 60(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Fed.R.Civ.P.. 60(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Fed.R.Civ.P. 60(d)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 12, 13,

16, 17, 19, 28,

29

Fed. R. Bankr. P. 9024 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*12 James WM.MOORE et al.,*
*MOORE'S FEDERAL PRACTICE § 60.21*
*[4][g] & n.52 (3d ed. 2009)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
          .

## STATEMENT OF JURISDICTION

The district court (Alvin K. Hellerstein, J.) had subject matter jurisdiction over this civil case arising under federal law pursuant to 28 U.S.C. § 1331. The district court issued a final decision affirming the Order of the Bankruptcy Court Denying the Movants Motion for Reconsideration on August 30, 2010. Judgment entered the same day. On September 29, 2010, the Rejected Dealers filed a timely notice of appeal pursuant to Fed.R.App.P. 4(a). This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

**STATEMENT OF ISSUES PRESENTED FOR REVIEW**

    1. Whether the court erred and abused its discretion in determining that there was no fraud on the court pursuant to 60(d)(3) by holding that the Bankruptcy Court's Rejection opinion at Footnote 21 contained no false statement of fact.

    2. Whether the court erred and abused its discretion in dismissing Appellants' appeal as untimely.

## PRELIMINARY STATEMENT

On June 9, 2009, the United States Bankruptcy Court, for the Southern District of New York, Judge Arthur J. Gonzales, approved the rejection of Appellants' dealership contracts (hereafter, the "Rejected Dealers") by the Appellees (hereafter "Old Chrysler") in the Rejection Order of June 9, 2009, and supplemented with the Rejection Opinion of June 19, 2009.

As a result, the Rejected Dealers lost their main source of livelihood and were denied the right to sell new Chrysler automobiles and parts. However, the underlying record during the Southern District of New York Bankruptcy Court's proceedings clearly established that the decision to restructure the dealership network - and therefore reject the Rejected Dealers' contracts - was made by Old Chrysler upon its own initiative and not at the request of the purchaser, Fiat/New Chrysler, or the US Government (lender).

Meanwhile, Old Chrysler had a fiduciary duty to protect its estate. And by cutting the dealership contracts, they subjected the estate to a potential rejection damages claim of approximately one billion dollars. Had Old Chrysler assumed the entire dealership network, the estate would have been free and clear of all rejection damage claims. Instead, Old Chrysler chose to breach 789 dealership contracts when neither a request for such restructuring was made by the purchaser, nor consideration given by the purchaser for such rejection. This was a direct violation of Old Chrysler's fiduciary duty to its estate and creditors. Therefore, the rejection of the Rejected Dealers' dealership contracts should not have been approved by the Bankruptcy Court.

The Rejected Dealers seek reversal of the decision of the District Court, to vacate the June 9, 2009 rejection order, to vacate the June 19, 2009 Rejection Opinion, and to remand the case to the U.S. Bankruptcy Court, Southern District of New York for damages.

10

## STATEMENT OF THE CASE

This appeal rises from the decision of United States District Court, Southern District of New York, issued by Judge Alvin K. Hellerstein, initially entered on August 30, 2010 and corrected on Sept. 14, 2010, CORRECTED ORDER AFFIRMING THE ORDER OF THE BANKRUPTCY COURT, DISMISSING APPELLEE'S MOTION FOR CERTAIN RELIEF, AND DENYING WITHOUT PREJUDICE COUNSEL'S MOTION TO WITHDRAW.

This order affirmed the June 9, 2009 Rejection Order of the United States Bankruptcy Court, Southern District of New York, issued by Judge Arthur J. Gonzalez, ORDER, PURSUANT TO SECTIONS 105 AND 365 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 6006, (A) AUTHORIZING THE REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES WITH CERTAIN DOMESTIC DEALERS AND (B) GRANTING CERTAIN RELATED RELIEF, and affirming the June 19, 2009 of the United States Bankruptcy Court, Southern District of New York, issued by Judge Arthur J. Gonzalez, OPINION REGARDING AUTHORIZATION OF REJECTION OF ALL EXECUTORY CONTRACTS AND UNEXPIRED LEASES WITH CERTAIN DOMESTIC DEALERS AND GRANTING CERTAIN RELATED RELIEF.

The Order also affirmed the Feb. 5, 2010 of the United States Bankruptcy Court, Southern District of New York, issued by Judge Arthur J. Gonzalez, OPINION DENYING REJECTED DEALERS' MOTION FOR RECONSIDERATION OF THE JUNE 9, 2009 REJECTION ORDER AND THE JUNE 19, 2009 REJECTION OPINION, Issued by Judge Arthur J. Gonzalez.

During the Bankruptcy Court hearings, key Fiat executive, Alfredo Altavilla, testified that it made no material difference to Fiat whether the dealership network was restructured prior

to the sale closing. (See Appendix G, Tr. of May 27, 2009 Hr'g at 352.) This testimony was clear and unambiguous. In the Bankruptcy Court's Rejection Opinion, the Court improperly reversed the candid testimony of Altavilla by way of the fraudulent Footnote 21, wherein the Court stated that Altavilla answered *affirmatively* to a question regarding whether the dealership network needed to be restructured for the sale to close. (See App. pg. 68; Appendix B, June 19, 2009 Rejection Opinion at pg. 18, Footnote 21). But the witness actually answered *negatively*. Again, Altavilla testified it made no material difference to Fiat whether the dealership network was restructured for the sale to close.

The Bankruptcy Court changed the clear answer of the witness in Footnote 21 to make it appear as if the witness said something he did not say. When the witness said it made no material difference, the witness clearly indicated that the sale would close even if no dealers had been cut. The Bankruptcy Court turned this testimony around by way of judicial ventriloquism.

The Rejected Dealers brought a Motion to Reconsider before Bankruptcy Judge Arthur J. Gonzalez, the same judge who issued the Rejection Opinion. In that Motion, the Rejected Dealers relied upon Rule 60(d)(3) and alleged fraud upon the court. At that time, the Rejected Dealers did not allege that the fraud upon the court was intentional, but rather the Rejected Dealers respectfully alleged that Footnote 21 exhibited a reckless disregard for the truth. The Rejected Dealers also brought a separate reconsideration request based upon Rule 60(b)(1). In the Opinion on Reconsideration, Judge Gonzalez held that the Rule 60(b)(1) motion was untimely. (See App. pgs. 95-119; Appendix C, Judge Gonzalez's Opinion on Reconsideration.) But Judge Gonzalez also acknowledged that there is no statute of limitations for fraud upon the court. (See App. pg. 108; Appendix C at pg. 14.) The court then went on to dismiss the 60(d)(3) motion on the merits.

12

The Rejected Dealers then appealed to the Southern District of New York. On appeal, the Rejected Dealers argued that the 60(b)(1) motion was, in fact, timely. However, Judge Alvin K. Hellerstein ruled that it was untimely. Since that issue was soundly in the discretion of the Court, the Rejected Dealers have not brought an appeal of the 60(b)(1) decision before the Second Circuit. This appeal is strictly limited to the Rule 60(d)(3) fraud on the court issue.

The Rejected Dealers appealed the fraud on the court issue before the Southern District of New York, but with a revised allegation that in condoning his own behavior in writing Footnote 21, Judge Gonzalez had therefore elevated the fraud from reckless to intentional. Judge Hellerstein then dismissed the fraud upon the court argument as well. And in doing so, the court made both a clear error of law, and three clearly erroneous findings of fact. (See App. pgs. 121-127; Appendix D, Judge Hellerstein's District Court Opinion.) The Rejected Dealers now seek review by the Second Circuit of these errors, and ask the court to reverse the decision of the District Court, to vacate the June 9, 2009 rejection order, to vacate the June 19, 2009 Rejection Opinion, and to remand the case to the U.S. Bankruptcy Court, Southern District of New York for damages.

## STATEMENT OF FACTS

1. On May 27, 2009, Fiat representative Alfredo Altavilla was questioned, and his response is set forth in the Sale Hearing Transcript at pg. 352 (See App. pg.138):

Q. If this transaction closes without an absolute requirement of a particular number of dealers that are being terminated, would Chrysler still go through with this deal -- I mean, rather, would Fiat still go through with this deal?

A. The answer is that a restructure needs to occur. *Whether it occurs before or after the closing of the deal is not a material difference*. [Italics added].

13

(See App. pg.138; Appendix G, pg. 352)

2. On June 9, 2009, Judge Arthur J. Gonzalez issued the June 9, 2009, Rejection Order which approved the rejection of Appellants' dealership contracts. (See App. pgs. 4-9; App. A).

3. In Footnote 21 of the June 19, 2009 Rejection Opinion, Judge Gonzales wrote, "...Altavilla also responded affirmatively to a question regarding whether a dealership network needed to be restructured for the Fiat Transaction to close, stating that a "restructuring needs to occur." (See App. pg. 68; Appendix B, June 19, 2009 Rejection Opinion at pg. 18, Footnote 21).

## PROCEDURAL HISTORY

On May 27, May 28 and May 29, 2009, the United States Bankruptcy Court held hearings to discuss the conditions upon which Chrysler, LLC might be transferred to its new owners. At the May 27th hearing, the testimony of Fiat representative Alfredo Altavilla was obtained, whose statement gives rise to this appeal.

On May 31, 2009, Judge Arthur J. Gonzalez, entered the Order, (1) Authorizing The Sale Of Substantially All Of The Debtors' Assets, Free And Clear Of All Liens, Claims, Interests And Encumbrances, (2) Authorizing The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases In Connection Therewith And Related Procedures And (3) Granting Related Relief.

On June 1, 2009, the court followed with its Opinion Granting Debtors' Motion Seeking Authority To Sell, Pursuant To 11 USC §363, Substantially All Of The Debtors' Assets.

On June 9, 2009, the court entered its Order, Pursuant To Sections 105 And 365 Of The Bankruptcy Code And Bankruptcy Rule 6006, (A) Authorizing The Rejection Of Executory Contracts And Unexpired Leases With Certain Domestic Dealers And (B) Granting Certain Related Relief.

On June 19, 2009, the court followed with its Opinion Regarding Authorization Of Rejection Of All Executory Contracts And Unexpired Leases With Certain Domestic Dealers And Granting Certain Related Relief.

On December 25, 2009, Appellants filed their Motion Of Certain Dealers To Reconsider The Court's June 9, 2009, Rejection Order And June 19, 2009 Rejection Opinion, and filed Movants' Memorandum In Support Of Motion To Reconsider The Court's June 9, 2009 Rejection Order And June 19, 2009 Rejection Opinion.

Thereafter, Old Car Co filed its Objection Of Debtors And Debtors In Possession To Amended Motion Of Certain Dealers To Reconsider The Court's June 9, 2009, Rejection Order And June 19, 2009 Rejection Opinion.

Appellants then filed their Amended Motion Of Certain Dealers To Reconsider The Court's June 9, 2009, Rejection Order And June 19, 2009 Rejection Opinion Amended Only To Include Additional Rejected Dealers As Moving Parties.

Old Car Co then filed their Objection and Brief on January 15, 2010.

On January 22, 2010, Movants filed a Reply To Debtor's Objection Brief.

Judge Gonzales then entered the Order Signed On February 5, 2010, Denying Rejected Dealers' Motion For Reconsideration Of The June 9, 2009 Rejection Order And The June 19, 2009 Rejection Opinion (Docket #6342, February 5, 2010) And His Opinion Signed February 5, 2010, Denying Rejected Dealers' Motion For Reconsideration Of The June 9, 2009 Rejection Order And The June 19, 2009 Rejection Opinion (Docket #6341, opinion signed on February 5, 2010).

Appellants then filed their Notice Of Appeal on February 12, 2010; however, because of a snowstorm and other problems with the electronic filing system, the payment of fees for the

appeal were not paid until February 16, 2010, both of which were within the fourteen days required to file a notice of appeal.

Appellants then certified the record on appeal on March 2, 2010, fourteen days from the effective date of the Notice of Appeal.

At the United States District Court, Southern District of New York, on July 8, 2010, Judge Hellerstein ordered oral argument on his own motion, scheduled to be heard on July 28, 2010.

On July 28, 2010, Judge Hellerstein adjourned oral argument, which was subsequently rescheduled for September 8, 2010.

On August 30, 2010, Judge Hellerstein entered the Order Affirming the Order of the Bankruptcy Court, Dismissing Appellee's Motion for Certain Relief, and Denying Without Prejudice Counsel's Motion to Withdraw.

On September 14, 2010, Judge Hellerstein entered the Corrected Order Affirming the Order of the Bankruptcy Court, Dismissing Appellee's Motion for Certain Relief, and Denying Without Prejudice Counsel's Motion to Withdraw.

On September 30, 2010, the Rejected Dealers filed its Notice of Appeal.

## STANDARD OF REVIEW

Rule 60, titled "Relief from a Judgment or Order" is incorporated into bankruptcy practice by Fed. R. Bankr. P. 9024. F.R.C.P. 60(d)(3) states:

*This rule does not limit a court's power to:*

> *(1) entertain an independent action to relieve a party from a judgment, order, or proceeding...*

> *(3) set aside a judgment for fraud on the court.*

The Rejected Dealers retain their right under F.R.C.P. 60(d)(1) to bring an *independent action* for relief from fraud on the court as the Rejected Dealers' Motion For Reconsideration under F.R.C.P. 60(d)(3) was treated by Judge Gonzalez as a motion:

> *"Moreover, courts addressing "motions for fraud upon the court have consistently proceeded on the presumption that the savings clause applies to motions." Weldon v. United States, 225 F.3d 647, 2000 WL 1134358 at \*1 (2d Cir. 2000) (unpublished summary order)..." In re Old Car Co*, 2010 Bankr. LEXIS 287 (Bankr. S.D.N.Y. 2010), or Appendix A, pg. 13.

Denial of the Rejected Dealers' Motion To Reconsider is reviewed by the District Court for abuse of discretion. *Grace v. Bank Leumi Trust Co*., 443 F.3d 180, 187 (2d Cir. 2006). "A ...court 'abuses' or 'exceeds' the discretion accorded to it when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding..." *Zervos v. Verizon Wireless New York, Inc*. 252 F.3d 163, 168-169 (2d Cir. 2001) (citing *Cooter & Gell v. Hartmarx Corp*., 496 U.S. 384, 405, 110 L. Ed. 2d 359, 110 S. Ct. 2447 (1990) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence."); *Milanese v. Rust-Oleum Corp*., 244 F.3d 104, 110 (2d Cir. 2001) ("A district court abuses its discretion if it bases its ruling on a mistaken application of the law or a clearly erroneous finding of fact.")

## SUMMARY OF ARGUMENT

On page 5 of Judge Alvin K. Hellerstein's Southern District of New York Opinion (Appendix D at pg. 5), the court held that The Rejected Dealers' fraud on the court motion was untimely. This was a clear error of law. The U.S. Supreme Court's controlling precedent states there is no statute of limitations when fraud upon the court is involved. *Hazel-Atlas Glass Co. v.*

17

*Hartford-Empire Co.*, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944), *overruled on other grounds by Standard Oil Co. of Cal. v. United States*, 429 U.S. 17, 97 S. Ct. 31, 50 L. Ed.2d 21 (1976).

Furthermore, Judge Hellerstein also erred, on page 6 of his Opinion, when he held that there was no fraudulent statement in Footnote 21 of the Bankruptcy Court's Rejection Opinion:

> *"Since the footnote did not contain a false statement, there could be no fraud on the court. See Workman v. Bell, 245 F.3d 849 (6th Cir. 2001)."* (See App. pg. 126; Appendix D at pg. 6.)

Judge Hellerstein correctly indicates that if there was a false statement in the lower court's Footnote 21, such a false statement would establish fraud on the court. The court properly cited the *Workman* case as authority. Therefore, Judge Hellerstein's statement on page 6 of the District Court's opinion is certainly in agreement with The Rejected Dealers' theory of the case which argued that a Judge will commit fraud upon the court by falsifying a footnote in his written opinion. Where Judge Hellerstein erred was in holding that there was no false statement in Footnote 21. This was a clearly erroneous finding of fact.

Fiat executive, Alfredo Altavilla, testified that it made no material difference to Fiat whether the dealership network was restructured prior to the sale closing. This testimony was clear and unambiguous. Judge Gonzalez then completely turned that testimony around to make it appear as if the witness stated it *did* make a material difference and that the restructuring was a condition precedent to the sale closing. According to Altavilla, the exact opposite is true.

The core issue before this honorable court is whether judges will be allowed to reverse the statement of a witness by way of judicial ventriloquism. Such a precedent will bring havoc upon the United States judicial system. The witness unambiguously stated that whether dealership restructuring took place before the sale closed made no material difference to the

18

purchaser.  Judge Gonzalez turned that testimony around in Footnote 21 of the Rejection

Opinion by stating that the witness testified restructuring of the dealership network *was* required

in order for the sale to close.  In doing so, Judge Gonzalez falsified the testimony of this key

witness.  Hence, fraud on the court has contaminated the proceedings and must be condemned

and reversed.

**LEGAL ARGUMENT**

**1. Whether The District Court Erred And Abused Its Discretion In Determining That There Was No Fraud On The Court Pursuant To Rule 60(d)(3) By Holding That The Bankruptcy Court's Rejection Opinion At Footnote 21 Did Not Contain A False Statement?**

 Judge Hellerstein made a clearly erroneous finding of fact on page 6 of his Opinion

when he held that there was no fraudulent statement in Footnote 21 of the Bankruptcy Court's

Rejection Opinion:

> *"Since the footnote did not contain a false statement, there could be no fraud on*
>
> *the court. See Workman v. Bell, 245 F.3d 849 (6th Cir. 2001)."*  (See App. pg. 126;
>
> Appendix D at pg. 6.)

By reverse implication, Judge Hellerstein correctly indicates that if there was a false

statement in the lower court's footnote, such a false statement would establish fraud on the court.

In Footnote 21 of the June 19, 2009 Rejection Opinion, Judge Gonzalez impermissibly

changed the meaning of testimony of Fiat executive, Alfredo Altavilla, ("Altavilla"). The second

sentence of Footnote 21 states:

> *"Altavilla also responded affirmatively to a question regarding whether a dealership*
>
> *network needed to be restructured for the Fiat Transaction to close, stating that a*
>
> *'restructuring needs to occur.'*  (See App. pg. 68; Appendix B at pg. 18.)

19

That is absolutely false. Altavilla never testified as asserted in Footnote 21, or in any other part of the record. In fact, Altavilla stated *exactly the opposite* when he told the court that it was "not a material difference" to Fiat whether dealer restructuring happened before or after the sale closed. The exact testimony Judge Gonzalez references in Footnote 21 is found in the May 27, 2009 Sale Hearing Transcript at pg. 352:

> Q. If this transaction closes without an absolute requirement of a particular number of dealers that are being terminated, would Chrysler still go through with this deal -- I mean, rather, would Fiat still go through with this deal?
>
> A. The answer is that a restructure needs to occur. *Whether it occurs before or after the closing of the deal is not a material difference*. [Italics added].

(See App. pg. 138; Appendix E pg. 352.)

Altavilla's testimony is clear and unambiguous: it made no material difference if the restructuring occurred after the closing of the deal. Therefore, Fiat would have gone through with the purchase without Appellants having lost their dealerships. As such, there was no reason for the Debtor to reject those contracts and certainly no legal cause for the Court's approval of the rejections.

Judge Gonzalez changed the meaning of this testimony so as to invalidate what the witness actually said. This is not proper by any standard. It's also noteworthy to point out here that Judge Hellerstein made a second clearly erroneous finding of fact when he stated, on pg. 1 of the District Court's Opinion,

> "However, approximately six months after the time to appeal expired, Appellants filed a motion for reconsideration, arguing in part that Chief Judge Gonzalez committed an intentional fraud on the court by mischaracterizing the testimony of a key witness."

(See App. pg. 121; Appendix D at pg. 1.)

But Appellants certainly did *not* allege intentional fraud in the motion for reconsideration. Instead, Appellants alleged that Judge Gonzalez acted with reckless disregard for the truth. It was only in the appeal to the Southern District of New York that Appellants alleged Judge Gonzalez's Opinion on Reconsideration, having failed to explain such reckless disregard for the truth, and having instead upheld it, thereafter elevated his conduct to intentional fraud.

The chronological series of events is very important as it shows a pattern of fraudulent judicial behavior which should not be tolerated. Judge Gonzalez had the chance to correct the reckless error by way of his Opinion On Reconsideration, but instead he chose to stand by the reckless disregard for the truth and therefore it now must be considered intentional. Regardless, Judge Hellerstein was wrong in stating that such intentionality was alleged in the Motion to Reconsider before Judge Gonzalez.

The record clearly and convincingly indicates that the assertion by Judge Gonzalez in Footnote 21 is unequivocally false. It involves judicial ventriloquism concerning the most important issue related to the Rejection Motion, and it mocks the purpose of justice. Without the false assertion erroneously attributed to Altavilla by Judge Gonzalez, the record of the case lacks any evidence whatsoever to indicate that rejection of the dealership contracts was requested by Fiat or New Chrysler as a condition precedent to the sale closing.

The record is now decisive that Judge Gonzalez did not merely misstate Altavilla's testimony; Judge Gonzalez *changed* the meaning of Altavilla's testimony. And it is precisely this action which gives rise to fraud on the court. The plain meaning of Altavilla's complete response is that restructuring did *not* need to occur for the sale to close. There is no lawful justification for

allowing the fraudulent Footnote 21 to stand. Tellingly, Judge Gonzalez didn't even try to defend the merits of Footnote 21 in his Opinion on Reconsideration.

Appellants relied upon *Workman v. Bell,* 245 F.3d 849 (6th Cir. 2001) in support of the "reckless disregard for the truth" standard:

> *"The elements of a 'fraud upon the court' are numerous. Fraud on the court is conduct: 1) on the part of an officer of the court; 2) that is directed to the judicial machinery itself; 3) that is intentionally false, willfully blind to the truth, or is in reckless disregard for the truth; 4) that is a positive averment or a concealment when one is under a duty to disclose; 5) that deceives the court." Workman v. Bell* at 852.

Judge Gonzalez changed the meaning of Altavilla's testimony and then relied upon his own revision to support the Rejection Order. The court has therefore been defrauded and it is entirely irrelevant that the time for direct appeal has expired:

> "*It is thus fraud where the court or a member is corrupted or influenced or influence is attempted **or where the judge has not performed his judicial function**--thus where the impartial functions of the court have been directly corrupted." Envirotech Corp. v. Amstar Corp*., 48 F.3d 1237 (Fed. Circ. 1995) (quoting *Bullock v. United States*, 721 F.2d 713, 718 (10th Cir.1983)). (Emphasis added.)

Changing the unambiguous testimony of a key witness to make that testimony fit the Court's desired conclusion is a failure of the judicial process which directly corrupts the impartial function of the court. *Envirotech* and *Bulloch* also make clear that intentional corruption or improper influence aren't even necessary elements of fraud on the court if one establishes that the judge has not performed his common judicial function. Such a malfunction of the judicial

machinery is itself enough to establish fraud on the court.

On pg. 2 of the District Court's Opinion, Judge Hellerstein makes a vital third clearly erroneous finding of fact by stating:

> *"The motion principally attacks the Bankruptcy Court's paraphrasing of a witness's testimony in a footnote in the Rejection Opinion."* (See App. pg. 122, Appendix D at pg. 2.)

Judge Gonzalez did not "paraphrase" Altavilla's testimony, he clearly reversed it. A proper paraphrasing of Altavilla's testimony would be that he stated it made no material difference to Fiat whether the dealership network was restructured prior to the sale closing. But Judge Gonzalez's Footnote 21 states the exact opposite. If this was a criminal trial and a key witness stated, "I did *not* see the accused shoot the victim," it would certainly be fraudulent for the Judge's Opinion to state that, "The witness said he *did* see the accused shoot the victim." That would not be paraphrasing. That would be lying.

If it was originally a reckless disregard for the truth when Judge Gonzales published the Rejection Opinion, it was later elevated to an intentional lie when he failed to correct Footnote 21 in his Opinion on Reconsideration.

**a. Fraud On The Court By Debtor's Counsel.**

Instead of basing arguments upon the actual record of the case, Old Chrysler's counsel *supplemented* the record on their own - and not under oath - by making reference to statements which do not exist anywhere in the record. Old Chrysler's counsel created fraudulent facts out of thin air by adding statements into the record which are not quoted and do not contain citations and do not even exist:

> *"Further, the Dealer Rejection Opinion disproves the Appellants' argument on the*

*merits. The Court's statements therein [emphasis added] show that the Court did not*
*conceal, mischaracterize or alter Mr. Altavilla's testimony and was fully aware of his*
*statement that Fiat did not perceive a material difference in whether the dealership*
*rejections occurred before or after the closing of the Fiat Transactions, as long as the*
*network restructuring did, in fact, occur as part of the sale transaction."* (Debtor's
Objection Memo at par. 44, pgs. 25-26).

This statement is fraudulent. Old Chrysler's counsel has mysteriously supplemented the
record by alleging that Mr. Altavilla's testimony states dealer restructuring needed to occur "as
part of the sale transaction". But nowhere does Altavilla say anything of the sort. This new
assertion is also an intentional fraud upon this Court. Old Chrysler's counsel makes this claim
when no such testimony exists anywhere in the record. It's a blatant lie.

In support of this lie, Old Chrysler's Counsel states, *"See Dealer Rejection Opinion at*
*195-97 (containing several references to Altavilla's testimony)."* (Debtor's Objection Memo at
pg. 26). But when you visit the Rejection Opinion at 195-197 (referring to *In re Old Carco, LLC*,
406 B.R. 180 (Bankr. S.D.N.Y. 2009), there is no such quote from Altavilla. (See App. pgs. 64-
68; Appendix B, pg. 14 - 18). Had Altavilla actually made such a statement, learned counsel
would surely cite to a page in the hearing transcript where such testimony could be found. But
there is no such testimony. This exhibits the judicial machinery breaking down into chaos.
Counsel is required to cite to the transcript and quote the witness therefrom. But that would be
impossible here as no such testimony exists.

Counsel's fabrication is then repeated again (see Debtor's Objection Memo at pg. 26, par.
45):

"Mr. Altavilla's snippet of testimony on which Movants rely merely addressed the issue

24

of timing — i.e., did the contract designations have to take place before or after closing. Mr. Altavilla testified that either was fine, as long as the restructuring was accomplished as part of the sale transaction."

Altavilla said no such thing. There is absolutely no support for this false assertion. It's another intentional fraud upon the Court. Altavilla never stated that restructuring had to be "accomplished as part of the sale transaction." This behavior is fraud on the court, a *fabrication* of testimony. It is intentional fraud inspired by Footnote 21 of the Rejection Opinion where Judge Gonzalez also fabricated an assertion which does not exist in the record. The judicial machinery has therefore been thoroughly defiled.

Judge Gonzalez failed to acknowledge that there is an ongoing record which did not end with the Bankruptcy Court's Rejection Opinion. The record continues through this process and grows with each new filing. The fraud has been perpetrated upon the entire record of the case.

**Conclusion.**

The false assertion of Footnote 21 is clearly an egregious judicial miscarriage of justice. The sanitization of Footnote 21 by the District Court stands as a brutal attack on the normal judicial function by setting a frightening standard. Should judges be allowed to change the testimony of witnesses, the judicial machinery will be defiled by forfeiting all notions of justice to fraud.

**2. Whether The District Court Erred And Abused Its Discretion In Dismissing The Rejected Dealers' Appeal As Untimely?**

On page 5 of the District Court's Opinion (See App. pg. 125; Appendix D at pg. 5), Judge Hellerstein held that the Rejected Dealers' fraud on the court motion was untimely:

> *"Appellants have failed to explain why this motion was not made earlier, when it*

> *would have been timely, or why the arguments advanced here could not have been raised*
>
> *in a timely appeal. Appellants may not use the 'extraordinary judicial relief' of a motion*
>
> *to reconsider to excuse their failure to timely appeal the Rejection Order and Opinion.*
>
> *Nemaizer, 793 F.2d at 61; Batac Dev. Corp. v. B & R Consultants, Inc., No. 98 Civ. 721*
>
> *(CSH), 2000 U.S. Dist. LEXIS 3695, at \*8-9 (S.D.N.Y. Mar. 22, 2000) (citing Competex,*
>
> *S.A. v. Labow, 783 F.2d 333, 335 (2d Cir. 1986); Fleming v. N.Y. Univ., 865 F.2d 478,*
>
> *484 (2d Cir. 1989))."*

Judge Hellerstein's holding that The Rejected Dealers' fraud on the court motion was untimely is a clear error of law since the U.S. Supreme Court has established there is no statute of limitations when fraud on the court is involved. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944), *overruled on other grounds by Standard Oil Co. of Cal. v. United States*, 429 U.S. 17, 97 S. Ct. 31, 50 L. Ed.2d 21 (1976). That the time to appeal may have already expired when fraud on the court is discovered is irrelevant according to the Supreme Court's holding in *Hazel-Atlas*:

> *"[E]ven if Hazel did not exercise the highest degree of diligence, Hartford's fraud*
>
> *cannot be condoned for that reason alone...Furthermore, tampering with the*
>
> *administration of justice in the manner indisputably shown here involves far more than*
>
> *an injury to a single litigant. It is a wrong against the institutions set up to protect and*
>
> *safeguard the public, institutions in which fraud cannot complacently be tolerated*
>
> *consistently with the good order of society. Surely it cannot be that preservation of the*
>
> *integrity of the judicial process must always wait upon the diligence of litigants. The*
>
> *public welfare demands that the agencies of public justice be not so impotent that they*
>
> *must always be mute and helpless victims of deception and fraud." Hazel-Atlas, 322 U.*

S. 246.

Furthermore, the authorities cited above (See Appendix D at pg. 5) by Judge Hellerstein do not in any way support his contention that The Rejected Dealers' fraud on the court motion is untimely. *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986), did not discuss fraud on the court. The same is true for *Batac Dev. Corp. v. B & R Consultants, Inc.,* and *Competex, S.A. v. Labow,* neither of which addresses fraud on the court.

Judge Hellerstein also relied upon *Campaniello Imports, Ltd. v. Saporiti Italia Sp.A.*, 117 F.3d 655 (2d Cir. 1997):

> *"To establish a claim under Rule 60(d), the Appellants must 'demonstrate that [they] had no adequate remedy at law or that [their] 'fault, neglect, or carelessness did not create the situation for which [it] seek[s] equitable relief.' LinkCo, Inc. v. Naoyuki Akikusa, 615 F. Supp. 2d 130, 135 (S.D.N.Y. 2009) (quoting Campaniello Imports, Ltd., 117 F.3d at 662)."* (See App. pg. 123; Appendix D at pg. 3.)

But The 2d Circuit Court of Appeals in *Campaniello* took direct note of the fact that fraud on the court was not part of that proceeding:

> *"Rule 60(b)'s 'savings clause' allows 'a court to entertain an independent action to relieve a party from a judgment, order, or proceeding ... or to set aside a judgment for fraud upon the court.' Fed.R.Civ.P. 60(b). As allowed by this provision, appellants have brought a direct attack seeking rescission of the stipulation of discontinuance based on allegations that appellees committed fraud in inducing the Settlement Agreement.*
>
> ***Appellants do not base their claim for rescission of the settlement on fraud upon the court.** Instead, they concentrate on the "provision--independent of the provision addressing 'fraud upon the court'--authoriz[ing] an independent action for fraud*

27

*perpetrated upon a party..." Campaniello Imports, Ltd. v. Saporiti Italia Sp.A.*, 117 F.3d
655, 661 (2d Cir. 1997) (emphasis added.)

Therefore, Judge Hellerstein's reliance upon *Campaniello* is clearly erroneous since, in
that case, the 2d Circuit made it clear that fraud upon the court was not at issue.

The District Court, in *LinkCo, Inc., v. Naoyuki Akikusa,* stated that the fraud arguments in
LinkCo's complaint indicated "obstruction of discovery and witness perjury", *LinkCo, Inc. v.
Akikusa, 615 F. Supp. 2d 130, 137 (S.D.N.Y. 2009),* to which the District Court established that
such allegations indicated "a fraud upon a single litigant -- *LinkCo* -- rather than a fraud upon the
Court.*" Id. at 136.* Appellants here have alleged fraud on the part of Bankruptcy Judge
Gonzalez, an allegation which, if established, does rise to fraud on the court. Therefore, *LinkCo*
is clearly distinguished since the facts in that case, as noted by the District Court, did not rise to
the level of fraud on the court.

Moreover, both Judge Hellerstein and Judge Gonzalez have erroneously analyzed the
timely issue for fraud on the court by indicating that Appellants could have been more diligent in
discovering the fraud within the ordinary time to appeal. However, as the US Supreme Court
stated in *Hazel-Atlas*, *"[E]ven if Hazel did not exercise the highest degree of diligence,
Hartford's fraud cannot be condoned for that reason alone." Hazel-Atlas 322 U. S. 246.* The
Rejected Dealers discovered the fraud on the court within six months, whereas in *Hazel-Atlas* the
fraud was discovered nine years later. As stated by the Supreme Court, even if the discovering
party did not exercise the highest degree of diligence in discovering the fraud, fraud on the court
cannot be condoned for that reason alone. The Rejected Dealers brought their 60(d)(3) motion as
fast as possible once the fraud was discovered.

Moreover, the fraud on the court was not discovered by Judge Hellerstein, who ruled that

there was no fraudulent statement in Footnote 21. Should this honorable court find that Footnote 21 is fraudulent, Judge Hellerstein's confusion over the issue is itself evidence of the intricate and deceptive nature of the fraud. It was effectively hidden in plain sight even when thoroughly illuminated by The Rejected Dealers' lower court briefs.

Incredibly, Judge Gonzalez, in his Opinion on Reconsideration, also held that the fraud upon the court motion was, in fact, not time barred:

> "While Rule 60(c)(1) limits the time within which a motion under Rule 60(b)(3) must be made to one year, a claim based upon fraud on the court under Rule 60(d)(3) is intended "to protect the integrity of the judicial process" and, therefore, is not time-barred." Bowie v. Maddox, No. 03-948, 2010 WL 45553, at * 2, ___ F.Supp. ___, ____ (D. D.C. 2010) (citing 12 James WM.MOORE et al., MOORE'S FEDERAL PRACTICE § 60.21[4][g] & n.52 (3d ed. 2009) (other citation omitted)). (See App. pg. 108; Appendix C at pg. 14.)

Fraud on the court prohibits the judicial machinery from functioning in its normal manner:

> "While fraud on the court can support Rule 60(d) relief, such fraud must "seriously affect the integrity of the normal process of adjudication." Gleason v. Jandrucko, 860 F.2d at 559; accord Hadges v. Yonkers Racing Corp., 48 F.3d 1320, 1325 (2d Cir. 1995) (observing that such fraud "embraces only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases" (internal quotation marks omitted)). This is because Rule 60(d) actions are warranted only when necessary "to prevent a grave miscarriage of justice."

*United States v. Beggerly*, 524 U.S. 38, 47, 118 S. Ct. 1862, 141 L. Ed. 2d 32 (1998)."

*Linko, Inc., v. Naoyuki Akikusa*, 2010 U.S. App. LEXIS 3498 (2d. Cir. 2010) (summary order).

Fraud on the court is available as a remedy *at any time* as long as the conduct involved has defiled the court by inhibiting the normal judicial machinery. *Hadges v. Yonkers Racing Corp.*, at 1325. If Judges are granted permission to change, rather than interpret, the testimony of witnesses, the judicial machinery will obviously break down into chaos. It's not an interpretation or a paraphrase for the Court to hold that the testimony of the witness was "yes", if the testimony of the witness was actually "no". To allow a Judge that power is to allow and condone fraud on the court. When such a fraud can be proved, the U.S. Supreme Court has held that the issue is not time barred.

**Conclusion.**

The District Court's ruling that The Rejected Dealers' fraud on the court motion was untimely is in direct contrast with precedent set by the U.S. Supreme Court in the *Hazel-Atlas* decision. Therefore, Judge Hellerstein's legal conclusion is clearly in error and should be reversed.

The Rejected Dealers seek reversal of the decision of the District Court, to vacate the June 9, 2009 rejection order, to vacate the June 19, 2009 Rejection Opinion, and to remand the case to the U.S. Bankruptcy Court, Southern District of New York for damages.

/ / /

/ / /

/ / /

/ / /

Respectfully submitted this 8th day of November, 2011.

// Stephen Pidgeon //
// Leo C. Donofrio //
PIDGEON & DONOFRIO GP
Old Federal Building
3002 Colby Avenue, Suite 306
Everett, Washington 98201
(425)605-4774 telephone
(425)818-5371 facsimile
*Attorneys for the Rejected Dealers*

## Certification pursuant to Fed.R.App.P. 32(a)(7)(C)

1.      This brief complies with the type-volume limitation of Fed.R.App.P 32(a)(7)(B) because:

a.      This brief contains 7,396 words, without excluding the parts of the brief that are exempted pursuant to Fed.R.App.P. 32(a)(7)(B)(iii); and

b.      This brief uses a monospaced typeface and contains 729 lines of text, without excluding the parts of the brief that are exempted pursuant to Fed.R.App.P. 32(a)(7)(B)(iii);

2.      This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type size requirements of Fed.R.App.P 32(a)(6) because:

a.      This brief has been prepared in a proportionally spaced typeface using Word 2003 and Adobe Acrobat (.pdf) in Times New Roman, using a 12 point font.

// Stephen Pidgeon //
Attorney for the Movants Appellants
Dated this 8th day of November, 2011

31