UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re: CHRYSLER, LLC, et al,            Case No. 10 CV 2493

      Debtor,            SUR REPLY OF PIDGEON DONOFRIO

## I. THE JULY 1, 2011 "MOTION FOR COMPENSATION" IS A MOTION SUBJECT TO THE FEDERAL RULES OF CIVIL PROCEDURE.

On July 1, 2011, attorney Corinne Ball used the District Court's electronic filing system to enter a "Motion For Compensation" requesting $128,762.50 in attorney's fees.  In Response, Pidgeon & Donofrio argued that the Motion was untimely according to FRCP 54(d)(2)(B)(iii), as well as deficient under Local Rule 7.1(a)(1).  In her July 19, 2011 Reply Memorandum, Attorney Ball made the absurd claim that, despite her having filed the request for a specific amount of attorneys fees as a "Motion" in the ECF system, the request was not actually a motion at all. (See Liquidation Trust's July 19, 2011 Reply Memo, pg. 3.)

Having filed the current action before this Court as a "Motion for Compensation" twice (on July 1, 2011; re-filed on July 14, 2011), the Liquidation Trust has, by the very wording of their papers (see July 1, 2011 Motion for Compensation at page 7, final paragraph), specifically requested a court order.   Therefore, Federal Rule of Civil Procedure 7(b)(1) clearly applies: *"A request for a court order must be made by motion"*.

The July 1, 2011 request for a specific amount of attorneys' fees is, therefore, beyond any doubt, a motion.

The U.S. Supreme Court stated, in *WILLY v. COASTAL CORP. ET AL*, 503 U.S. 134, (1992), that Rule 1 of the Federal Rules of Civil Procedure governs their scope; *"It provides that '[t]hese rules govern the procedure in the United States district courts in all suits of a civil*

SUR REPLY OF PIDGEON DONOFRIO - 1

*nature ....'"* Id. at 134.   Since the FRCP apply to all civil matters before this Court, Attorney Ball's July 1, 2011 Motion is governed by FRCP 54, and is untimely by at least 23 days.

In her July 19, 2011 Reply, Attorney Ball also argues that since the 2d Circuit had previously determined that the Liquidation Trust was generally entitled to attorneys' fees, no further motion was necessary in the District Court, despite the secondary issue concerning the *specific amount* of fees having been remanded to the District Court.

Attorney Ball argues that the remand was specifically limited to determining the amount of fees, but in making this argument she wrongfully assumes that the Federal Rules of Civil Procedure do not apply to her request that this Court issue an order granting a specific amount of attorneys' fees.   Her assumption is wrong. The FRCP govern all motion practice in this Court.

Furthermore, the 2d Circuit didn't grant a waiver to the Liquidation Trust regarding deadlines imposed by the Federal Rules of Civil Procedure, and the 2d Circuit's Order of May 25, 2011, provides no scheduling guidance at all. Additionally, FRAP 38 affords no extension to, or waiver from, direct compliance with FRCP 54(d).

Attorney Ball appears to argue that once a *general* entitlement to attorney's fees has been established, Rule 54's 14 day deadline is then inapplicable to a later request for a *specific* amount of fees.   This is assertion is directly contradicted by the very wording of Rule 54 itself, which directly contemplates that motions regarding specific amounts of attorney's fees will come at a later time after the general right to attorney's fees has been established.   Rule 54 states:

> *(2) Attorney's Fees*.
>
> (A) Claim to Be by Motion. A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.

SUR REPLY OF PIDGEON DONOFRIO - 2

**(B) Timing and Contents of the Motion. Unless a statute or a court order provides otherwise, the motion must:**

(i) be filed no later than 14 days after the entry of judgment;

**(ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;** (Emphasis added.)

(iii) state the amount sought or provide a fair estimate of it

54(2)(B)(ii) makes clear that Rule 54's 14 day deadline applies to a claim for a specific amount of attorney's fees, even though a prior judgment, statute or other grounds have previously established that the movant is entitled generally to an award.

Being entitled to a general award of attorney's fees by their previously successful FRAP Rule 38 Motion does not provide a waiver from the 14 day deadline of FRCP 54, which clearly anticipates that a movant may have already prevailed as to the issue of entitlement, which is separate from a claim for a specific amount.

Attorney Ball alleges that the FRCP have no applicability to her request for this Court to order a specific amount of fees.  She assumes that there is no deadline whatsoever.  If her argument were true, then Attorney Ball could have waited as long as she liked, years into the future, to request a specific amount of fees.  Under that scenario, the Court would not be able to operate with efficiency.  It would be chaos for litigants and the Court if those entitled to an award of attorney's fees were under no deadline to submit a specific claim amount.  This is exactly why the Rule 54 deadline was imposed by Congress.  In *Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 226 (2d Cir. 2004), the 2d Circuit considered the advisory notes to FRCP 54: *"Congress's reasons for its 1993 addition to Rule 54(d)(2)(B) (the fourteen-day deadline) were three-fold: (1) to provide notice of the fee motion to the non-movant before the time to appeal*

SUR REPLY OF PIDGEON DONOFRIO - 3

*expires; (2) to encourage a prompt ruling on fees to facilitate a consolidated appeal on both the merits and the attorneys' fee issue; and (3) to resolve fee disputes efficiently... Fed. R. Civ. P. 54 advisory committee's notes (1993); see Weyant v. Okst, 198 F.3d 311, 315 (2d Cir. 1999) (noting that the deadline was intended, in part, to minimize piecemeal appeals of merits and fee questions). Allowing district judges to extend the deadline for filing a motion for attorneys' fees without any showing of excusable neglect would impede these efficiency and fairness goals."* Tancredi, at 227.

      Attorney Ball provides no authority whatsoever to support her claim that FRCP 54 does not apply to a request for a *specific* amount of attorney's fees in the Southern District, District of New York, if the 2d Circuit has previously granted a *general* entitlement.

      Additionally, Attorney Ball also provides no authority for her contention that our reliance upon *Jericho Group, Ltd. v. Midtown Dev., LP*, No. 07 Civ. 1792 (CM)(DCF), 2008 U.S. Dist. LEXIS 52706 (S.D.N.Y. May 22, 2008), is misplaced.   In *Jericho,* this Court held that a remand order is a final decree triggering the mandatory applicability of FRCP 54(d).

**II. The Declarations of Attorneys Ellman and Berlin In Support of the July 19, 2011**
**Reply Contain New Facts That Confirm Fraudulent Representations Were**
**Made To Pidgeon & Donofrio By Attorney Ellman.**

      In Stephen Pidgeon's Affidavit in support of Pidgeon & Donofrio's July 15, 2011 Response, he drew the Court's attention to communications by Attorney Ellman that made it appear as if this Court had provided specific instructions requesting that the parties stipulate to a scheduling order.   And the July 19, 2011 Declarations by Attorneys Ellman and Berlin did not deny that Elmann told Pidgeon, verbally and by email, that this Court had issued such a request.

      Furthermore, the July 19th Declarations by Ellman and Berlin admit that no such

SUR REPLY OF PIDGEON DONOFRIO - 4

instruction or request was ever made by this Court. Instead, the Declarations state that Attorney Berlin contacted "Court staff" requesting advice as to proper procedure.   (See July 19, 2011 Declaration of Attorney Berlin at pg. 3.)   Attorney Ellman's Declaration indicates that Berlin spoke with an anonymous "law clerk". (See July 19, 2011 Declaration of Jeffrey Ellman at pg. 3) who "suggested" that the Liquidation Trust *"seek an agreement with Pidgeon & Donofrio for a briefing schedule..."* (See July 19, 2011 Declaration of Attorney Berlin at pg. 3.)

The version of events contained in the July 19, 2011 Declarations of Ellman and Berlin directly contradicts the facts provided to this Court in Stephen Pidgeon's July 15, 2011 Affidavit.   Exhibit 7 from the Pidgeon Affidavit is an email from Ellman to Pidgeon, dated June 23, 2011.   This is a reply by Attorney Ellman to the question - *"Jeff: Was there an instruction from the court to create a schedule?"*   On June 23, 2011, Ellman responded via email as follows:

> *"Yes. My understanding is that the Court asked us to work out a scheduling order with opposing counsel. So we came up with what we thought was an appropriate schedule, and I called you and sent the proposed stipulation. I think it is a fair schedule. If you agree, you can sign the stipulation and we can get this filed."*

Ellman's reply unequivocally implies that "the Court" provided instructions requesting a scheduling order.   Ellman's July 19th Declaration doesn't deny that he informed Pidgeon & Donofrio that "the Court" requested a stipulation, but he now claims that there was only a "suggestion" by an anonymous law clerk.   There is a world of difference between a *suggestion* by a law clerk and a *Court ordered instruction* directing the parties to stipulate to a scheduling order.   Therefore, the June 23, 2011 email by Ellman is fraudulent, unethical, and illegal.

It is incredulous to contemplate that all attorneys and staff at Jones Day were completely

SUR REPLY OF PIDGEON DONOFRIO - 5

unaware of the possible application of a 14 day deadline imposed by FRCP 54.   Ellman's June 23, 2011 email fraudulently indicates that this Court had requested a stipulation many days after that 14 day deadline had passed.   It is a fair assumption that attorney Ellman knew Pidgeon & Donofrio would be in jeopardy had they signed the stipulation.

Attorney Ellman's June 23, 2011 email shows complete disrespect for this Court, its Rules, and for the law in general.   We have no doubt that if Pidgeon & Donofrio had been so brazen, attorneys for Jones Day would be calling for severe sanctions.

Not only were the fraudulent representations by Ellman unfair and severely prejudicial to Pidgeon & Donofrio, they were criminal.   In *Jericho Group, Ltd. v. Midtown Dev., LP*, this Court discussed *New York State Judiciary Law* § 487:

> *"The New York State Judiciary Law provides that an attorney who (1) is guilty of any deceit or collusion, with intent to deceive the court or any party, or who (2) willfully delays his client's suit with a view to his own gain, commits a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he "forfeits to the party injured treble damages, to be recovered in a civil action." Plaintiff asks that this court award three time the attorneys' fees it incurred in obtaining remand of the wrongly removed action."*   2008 U.S. Dist. LEXIS 52706 at 13.

In *Jericho*, this Court held that it did not have subject matter jurisdiction over that statute, and we have not asked this Court to apply that statute here.   But we raise it now in support of our contention that Attorney Ellman's deception rises to the level of criminal behavior.

Attorney Ellman's July 19, 2011 Declaration does not deny any of the facts stated by Stephen Pidgeon, while at the same time he essentially admits that the June 23, 2011 email contained a false statement.   That email indicated that "the Court" provided an instruction

SUR REPLY OF PIDGEON DONOFRIO - 6

requesting a stipulation.   **Ellman's invocation of "the Court" implies that Your Honor made this request.**   But there was no request by Your Honor, and there was no request by District Court Staff either.   Attorney Ellman now admits that there was only a "suggestion" by an anonymous "law clerk".

Furthermore, none of Ellman's emails or phone calls with Stephen Pidgeon ever stated that attorneys for Jones Day were confused as to the proper procedure, nor did these communications ever mention ex parte contact with District Court Staff, or an anonymous "law clerk".

Ellman's communications with Stephen Pidgeon indicated that "the Court" requested the parties participate in a stipulation.   But no such request was ever was made by "the Court".   Attorney Ellman should not be allowed to invoke the power of "the Court" with such cavalier abandon.   And if his behavior is not sanctioned it will provide a terrible precedent.

Respectfully submitted this 23rd day of June, 2010.

    //STEPHEN PIDGEON //_____
STEPHEN PIDGEON, Esq.
LEO C. DONOFRIO, Esq.
3002 Colby Avenue, Suite 306
Everett, Washington 98201
(425)605-4774
Attorneys for Appellants

SUR REPLY OF PIDGEON DONOFRIO - 7